574 A.2d 693

Eileen HANDSCHUH, Administratrix of the Estate of Thomas
H. Handschuh, Deceased, and Eileen Handschuh, Individually
and Eileen Handschuh as Mother and Natural Guardian of
Kimberly Ann Handschuh, a Minor

v.

ALBERT DEVELOPMENT and Richard Berkheimer and Kath-
leen Berkheimer and Thomas Rickets and Ridley Township,
and Ridley Township Sewer Authority and Ridley Township
Municipal Authority and John P. Damon Associates, Inc.,
Appellants.

Superior Court of Pennsylvania.

Argued Nov. 29, 1989.

Filed May 10, 1990.

Ronald D. Ashby, Media, for appellant.

Gary R. Block, West Chester, for appellee.

Before BROSKY, BECK and HOFFMAN, JJ.

BROSKY, Judge.

This is an appeal from a judgment entered after post trial motions were denied. Appellant raises several contentions of error regarding the court's failure to instruct the jury on the defense of assumption of the risk, error in instructing the jury on agency and error in molding the verdict. We affirm.

The facts of relevance indicate that appellee's decedent was a plumbing contractor engaged in the task of installing a residential sewer line for appellant, Albert Development, at the site of a house being built by appellant, when he was killed in a trench cave-in accident. The job involved the digging of a trench approximately ten feet deep, (tapered to shorter depths as the trench neared the house), between the house and the sewer main located under the adjacent street, and laying and connecting pipe from the main to the house.

The decedent was aware, as were the excavator and general contractor, that such trenches can cave in and that there was a general risk of cave-in any time one entered a trench. At some point prior to the actual breaking of ground it was suspected that this particular job would be delicate, a suspicion which was confirmed when water was struck during the digging. In response to the "delicateness" of the situation, the decedent shortened the lengths of pipe, from the standard 20 feet to 10 feet, so that the length of open trench he would be working in would also be shortened. Also, certain warning precautions were taken where someone would watch the trench in order to shout a warning should the threat of a cave-in become imminent.

The actual operation was not without difficulty. In fact, a few times during the course of this particular job small amounts of dirt were observed to fall into the ditch. On each such occasion, a warning was shouted and evasive actions were taken, although the decedent did not exit the trench on every occasion. However, in contrast, at no point did the erosion of dirt approach that of a cave-in of the trench. On the occasion of the fatal collapse of the trench, the excavator observed a seam or crack in the back corner of the dirt bank and saw it move forward a bit and then shouted a warning. The decedent turned and retreated a few steps, hesitated and turned again when the bulk of the dirt hit him. He was retrieved from the ditch but ultimately died from the injuries sustained in the collapse.

At trial, appellant asserted the defense of assumption of the risk but was denied a jury instruction on the defense. Instead the jury was instructed on the theory of comparative negligence. The jury found the decedent, appellant and the excavator all one-third negligent. Upon appellee's motion, the verdict was molded by subtracting one-third and adding delay damages. This appeal followed.

The theory of assumption of the risk would seem to be one of the more difficult issues to grasp and apply in the law of torts. This was apparently recognized by a plurality of our Supreme Court in *Rutter v. Northeastern Beaver*

*County School Dist.*, 496 Pa. 590, 437 A.2d 1198 (1981). They said:

> There is a serious question as to whether the doctrine of assumption of risk, which has had its origins in a now somewhat disfavored legal philosophy and which has presented problems of application of a type well illustrated by this case, should be permitted longer to survive.

The Court went as far as to attempt to invalidate the doctrine in Pennsylvania, but fell one vote shy of reaching that goal. Be that as it may, and giving full validity to the doctrine, we nevertheless conclude that appellant failed to demonstrate that the decedent assumed the risk of injury sustained, within the legal concept of the assumption of the risk defense, and that the trial court was correct in denying the requested instruction.

The parameters of the assumption of the risk defense are somewhat difficult to define. However, one thing is abundantly clear from a review of relevant authority: that is, that certainly not all voluntary encounters with a foreseeable risk result in application of the assumption of the risk doctrine. Life is full of perils, many of which are foreseeable. However, the fact that an individual proceeds in daily activities does not mean that he is thereby excusing from liability an individual who has negligently caused him harm. As the noted writer on torts, William Prosser has stated:

> A pedestrian who walks across the street in the middle of a block, through a stream of traffic travelling at high speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to avoid running him down.

W. Prosser, Law of Torts, (4th ed. 1971) at 445. This is true even though it is readily foreseeable, and thus must be understood to be an associated risk of the endeavor, that one might be struck by one of the vehicles. Understandably, in light of these principles, we have stated "[a]ll voluntary risk-taking that can be described by the ambiguous phrase 'assumption of the risk' does not constitute the

defense." *Fish v. Gosnell,* 316 Pa.Super. 565, 463 A.2d 1042, 1048 (1983). Instead, all the elements of the defense—that the plaintiff fully understood the specific risk, voluntarily chose to encounter it, and under circumstances that manifest a willingness to accept it—must be demonstrated before the theory will be submitted to the jury. *Id.* We commented in *Fish,* that a "particularly difficult element of the defense is in defining 'circumstances that manifest a willingness to accept' the risk." *Id.*

The essence of assumption of the risk defense is not an evaluation of fault or negligence in encountering a danger but an acknowledgement that the plaintiff changed his position. Before suffering injury "he intelligently acquiesced in a known danger and abandoned his right to complain, but afterwards, seeks to assert the claim he had waived." *Id.,* 463 A.2d at 1049. We stated in *Fish* that "to imply such a waiver from conduct and circumstances alone can be a source of 'misapprehension and confusion' and 'frequent misapplication.'" *Id.* Thus our court has taken a restrictive attitude toward the circumstances from which the assumption of risk defense might imply, *id.,* and has concluded that endeavors that contain an element of voluntary risk-taking do not necessarily demonstrate a deliberate abandonment of the right to complain, but rather, are better judged by their reasonableness under the circumstances, thus, implicating comparative negligence principles. *Id.*

▇ In the present case it is true that the decedent was aware of the risk of a trench cave-in prior to suffering the fatal accident. However, as alluded to earlier, there are many practical endeavors in life that have foreseeable dangerous consequences attached to them. Every time that an individual takes a seat in an automobile or an airplane, for instance, he should be aware that there exists a possibility that the vehicle may collide with another or that the plane may crash to the ground. Every time that an individual undergoes surgery he should be aware that there is a risk of lapsing into a coma or dying. However, the law has never taken cognizance of these facts and relied upon them

to excuse an individual who negligently causes a motor vehicle collision from liability for the resulting injuries, or likewise excusing a negligent surgeon or anesthesiologist or the negligent airline from resulting injury or death. Certainly the decedent was aware of the general dangers associated with the job he had contracted to provide. But this does not necessarily indicate that he was agreeing to excuse the contractor from exercising proper care and regard for his safety. To the extent appellant's negligence was a substantial factor contributing to the decedent's death, and in the absence of evidence that appellant had abandoned his right to complain, appellant was rightfully held accountable for the decedent's death.

■ Appellant has attempted to paint a picture that implies that the decedent assumed the risk of a trench collapse in the legally acknowledged sense. Yet, we are unconvinced by this attempt. The true essence of appellant's argument is that the risk of cave-in in this particular case was so exigent and obvious that the decedent's decision to perform or continue with the job must be construed as a voluntary assumption of the risk, or in other words, an abandonment of the right to complain. In practicality, this is the true essence of the defense itself. A situation involving the voluntary encountering of a known danger under circumstances that suggest, or really compel a finding of, a waiver of an individual's right to complain about a breach of duty of care to the risk taker. Examples of such situations were related in *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525 (1988), and include the act of walking over a clearly visible patch of ice in a parking lot, *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983), ascending or descending obviously uneven steps, *Villano v. Security Savings Assoc.*, 268 Pa.Super. 67, 407 A.2d 440 (1979), attending a baseball game (the risk of being struck by a baseball), and inserting one's head into an elevator shaft through a broken protective window, *Malinder v. Jenkins Elevator Co.*, 371 Pa.Super. 414, 538 A.2d 509 (1988). However, if the true nature of the defense is the

encountering of a risk under circumstances that imply waiver of a right to complain, we do not believe appellant has demonstrated that situation in the present case.

Appellant points to several facts in an effort to imply a waiver of a right to complain, the fact that this job was considered delicate by the decedent and the excavator, even dangerous. Also to the fact that water was struck during excavation and that it had previously rained. Appellant also points to the few occasions during the job when small amounts of dirt fell from the side of the trench, and the fact that the decedent had insisted on finishing the job despite the difficulties encountered. However, despite the fact that there was an element of risk in the job, the risk of a collapse did not appear to be so great that, in practicality, performance of the job would have to be construed as a waiver of a right to complain.

The excavator testified that the job was dangerous, meaning that it required "respect" and required one to be "on the alert." However, he further stated that it was not unsafe, meaning that you "would never go in it." He further testified that he didn't feel the job was dangerous enough to shut the machines down and that at a point prior to the accident he felt that they had completed the most dangerous part of the job and that "there was no cave in situation." As such, there was no assumption of an extraordinary risk under circumstances that would *imply* a waiver of a right to complain, and certainly, there has not been demonstrated any kind of express waiver of this sort.

As we suggested earlier, the fact that the decedent voluntarily performed a job that had some associated risk, cannot, by itself, imply a waiver of another's duty of care; or excuse an individual who has negligently contributed to the occurrence of that contemplated risk. If so, much of all actionable injury would be rendered unredressable due to the doctrine of assumption of the risk. This is hardly the purpose of the doctrine, and is also a legally and logically faulty position. Furthermore, much of the actions which could be cited to support an assumption of the risk theory

occurred in close time proximity to the accident.[1] Under such circumstances, *Fish v. Gosnell, supra,* suggests that those actions be considered in a reasonableness/negligence context, not in an assumption of the risk context. The theory of comparative negligence was submitted to the jury, which, in fact, found the decedent one-third negligent. Consequently, we conclude that the trial court did not err when he refused to instruct the jury on assumption of the risk.

As to appellant's other issues, we have reviewed the allegation of error regarding the instruction on agency but have found no error. We will rely upon the discussion of this issue in the opinion of the trial court in affirming this issue. Further, we find appellant's contention regarding error in the molding of the verdict waived for failure to complain of the trial court's molded verdict, or to otherwise raise this contention below. See, *Dilliplaine v. Lehigh Valley Trust,* 457 Pa. 255, 322 A.2d 114 (1974).

For the foregoing reasons, we affirm the judgment appealed from.

Judgment affirmed.

BECK, J., files a concurring statement.

BECK, Judge, concurring:

I join the majority. I write separately only to note my continuing adherence to the view that with the enactment of the Comparative Negligence Act, 42 Pa.Cons.Stat.Ann. § 7102 (1982), the legislature also clearly intended the aboli-

---

1. It would appear important to distinguish the facts which relate to a point in time prior to the performance of the job and those that occurred rather contemporaneously with it. Certainly, the mere contracting of the job to install the sewer line, without more, would seem insufficient to establish assumption of the risk. There would simply be an insufficient basis from which waiver of the right to complain could be implied. The other events which occurred during the performance of the job very well may be too close in proximity to be considered, under *Fish v. Gosnell,* in implying such a waiver as well. For instance the decedent's decision to remain in the ditch when the warning was sounded immediately preceded the collapse, and under *Fish* would be properly considered in a comparative negligence context, not an assumption of the risk context.

tion of the defense of assumption of the risk in cases where the plaintiff's conduct can be characterized as negligent. In such cases, the plaintiff's conduct should be analyzed under the rubric of comparative negligence and compared to that of the defendant. Whether the plaintiff's conduct can also be characterized as a voluntary assumption of the risk should not be regarded as controlling. *See Malinder v. Jenkins Elevator & Machine Co.*, 371 Pa.Super. 414, 538 A.2d 509 (1988) (Beck, J., dissenting); *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 532–33 (1988).

As the majority notes, the "parameters of the assumption of the risk defense are somewhat difficult to define." This case is a perfect illustration of the difficulties presented in determining the applicability of the defense where the plaintiff's conduct is negligent. When precisely does the negligent conduct of a plaintiff rise to the level of a voluntary assumption of the risk? Under what circumstances can it be implied that the plaintiff has abandoned his right to complain of the consequences? Case law provides no workable standard to use in answering these questions. These difficulties would be avoided if it were recognized that the Comparative Negligence Act has eliminated the need for courts or juries to grapple with this unwieldy concept. The Act allows a jury to make a full and fair assessment of the plaintiff's conduct whenever it can be characterized as negligent, to compare it to that of the defendant, and to reduce or even bar recovery where appropriate.