**Oliver v. Chartiers-Houston Athletic Association**

*Alan Perer,* for plaintiffs.
*Harry Paras,* for defendant Theiss.
*Jane Thompson,* for defendant Association.

TERPUTAC, *J.,* December 8, 1995—Before the court are two motions for judgment on the pleadings: one motion by Chartiers-Houston Athletic Association and its officers (Alan Henderson and Jill Henderson have been substituted by court order for two other officers), and a second motion by Robin Theiss and her parents.

On May 8, 1992, the minor plaintiff, Nicholle Oliver, was struck in the head by a softball at Hickory Field, Mt. Pleasant Township, Washington County, Pennsylvania. Resolving facts and inferences in favor of the plaintiffs, as we must, the court finds that although Nicholle was dressed in her softball uniform, she was not going to play that day. As members of her team were engaged in warm-ups prior to the game, Nicholle was standing and talking to some teammates at a point off the field of play but near the batting cages. Robin Theiss, one of the defendants, retrieved a softball which she had missed catching; she picked up the ball and threw it back to her teammate in the path of the area where Nicholle was standing. Unfortunately, the ball struck Nicholle in the right temple, causing serious injuries.

The plaintiffs, Nicholle Oliver, by her parent Rose Oliver, and Rose Oliver in her own right, initiated this civil action against the Chartiers-Houston Athletic Association and its officers and also against Robin Theiss and her parents. Terry Theiss is her father and he was president of the Association at the time. Mt. Pleasant Township has been dismissed by the court on preliminary objections.

The Association and its officers claim the defense of statutory immunity pursuant to 42 Pa.C.S. §8332.1(a) applicable to non-profit organizations. All defendants assert that judgment on the pleadings should be granted on the basis of assumption of the risk.

Judgment on the pleadings may be granted only where no material facts are in dispute and the case is so free from doubt that a trial would clearly be a fruitless exercise. The court must confine itself to considering the pleadings and relevant documents, accepting as true all well-pleaded averments of fact in favor of the party against whom judgment might be granted. Furthermore, we must consider facts which the non-moving party has specifically admitted. *Hite v. R.J. Reynolds Tobacco Co.,* 396 Pa. Super. 82, 578 A.2d 417 (1990). The motion is in effect a demurrer, so that the court should be guided by the same principles as would be applicable as if we were disposing of preliminary objections in the nature of a demurrer. *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 516 A.2d 672 (1986).

In the event we find as a matter of law that the minor plaintiff has assumed the risk of injury, we need not address the issue of statutory immunity. To the extent that an assumption of the risk analysis is appropriate in a given case, it shall be applied by the court as part of the duty analysis, not as part of the case to be determined by the jury. Under this approach the court may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately, with awareness of the specific risks inherent in the activity, nonetheless engaged in the activity that produced the injury. In this situation the court should determine that the defendant as a matter of law owed no duty of care. *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993). As illustrated in *Handschuh v. Albert*

*Development,* 393 Pa. Super. 444, 574 A.2d 693 (1990), situations involving the voluntary encountering of a known danger exist under circumstances that suggest or compel a finding of waiver of a person's right to complain about a breach of duty to the risk taker, such as (1) walking over a visible patch of ice in a parking lot, (2) ascending obviously uneven steps, (3) attending a baseball game and being struck by a ball, and (4) inserting one's head into an elevator shaft through a broken protective window. *Id.* at 449, 574 A.2d at 696.

Not only attending but also participating in athletic games commonly come within the ambit of assumption of the risk. We believe that *Bowser v. Hershey Baseball Association,* 357 Pa. Super. 435, 516 A.2d 61 (1986), is controlling. There the Hershey Baseball Association, a non-profit though unincorporated organization, formed a summer baseball program for youths and adults. Plaintiff was named commissioner of the "teener" league for youngsters of ages 13 to 15 years. During tryouts for the team, the batters would bat from a point between home plate and the backstop. Except for the pitcher, batter, and on-deck batter, all other players who were trying out for the team were scattered on the playing field. As part of his duties to insure that each participant was evaluated, the plaintiff kept track of the roster and called participants from the field to bat. After he had been standing behind the backstop for about two hours, he walked to the players' bench where other adults were standing. As the plaintiff turned his back to call in two more participants, he was struck in the eye by a batted ball. Judgment of nonsuit was affirmed. The court stated:

"When he agreed to participate on the field during the baseball tryouts, he voluntarily exposed himself to the risks inherent in baseball. One of the risks inherent

in baseball is being hit by a batted ball. See *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978). Having voluntarily exposed himself to the risk of being hit by a batted ball, Bowser cannot recover from the sponsor of the baseball event for injuries caused by this very risk.

"Earlier decisions which reached this result relied upon the doctrine of voluntary assumption of the risk. These decisions held that by attending a baseball game, a plaintiff knowingly accepted and assumed the reasonable risks inherent in the game. See *Iervolino v. Pittsburgh Athletic Co.,* 212 Pa. Super. 330, 243 A.2d 490 (1968); *Schentzel v. Philadelphia National League Club,* 173 Pa. Super. 179, 96 A.2d 181 (1953). More recently, the rationale adopted by the courts for this rule is that persons conducting the activity have no duty to warn or protect participants against risks which are common, frequent, expected and inherent in the activity itself." *Bowser, supra* at 440-41, 516 A.2d at 63-64.

Applying these principles to the case before us, we note that the *Bowser* court refused to distinguish a tryout from an actual game. The same situation is extant in this scenario: the plaintiff was standing off the field itself, but the fact that no actual game was in progress is of no moment. Whether spectator or participant, Nicholle was in the zone of danger, and one within this zone must assume the common, frequent, and expected risks inherent in the sport. These risks include being struck by a batted ball and an errant ball thrown by another participant. Moreover, whether she was near the batting cage or off the main field of play is of no real concern in this context. The record shows she was near the playing field itself, not in an area protected from the field. As a matter of common knowledge,

risks inherent in warm-ups are more likely to be more serious, for in warm-ups many youths are throwing and catching many balls.

We also believe that reliance by plaintiffs on *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978), is misplaced. There the court held that a spectator who had been struck by a batted ball during practice did not expose herself to the common, frequent, and expected risks of the baseball game. For one thing, the plaintiff was standing in an interior walkway, an opening in the stadium which cannot be characterized as part of the spectator sport. For another thing, she was not aware that batting practice was going on. The no-duty rule could not be applied to bar her recovery. *Id.* at 86-87, 394 A.2d at 551-52.

In the instant case the minor plaintiff was in uniform, a member of the team, though she would not be playing that day. She knew warm-up was going on. She was standing and talking to her friends, at a place near the main field where the warm-up was taking place. The no-duty rule applies to this situation where the risks are common, frequent, and expected: the minor plaintiff can be properly charged as a matter of law with the risk of being struck by a softball improperly thrown by other participants during warm-up. Because we find that the minor plaintiff assumed the risk of injury, we need not address the issue of statutory immunity.

## ORDER

And now, December 8, 1995, the motions of the defendants, Chartiers-Houston Athletic Association and its officers: Terry Theiss, president; Sondra Moore, vice-president; Alan Henderson, secretary; and Jill Henderson, treasurer; and of the defendants, Robin Theiss,

a minor, by and through Terry Theiss and Anna Theiss, her parents, for judgment on the pleadings are granted.

Upon praecipe, the prothonotary shall enter judgments against the plaintiffs, Nicholle Oliver, a minor, by her parent and natural guardian, Rose Oliver, and Rose Oliver, in her own right, and in favor of the defendants.