Christopher WALLIS

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY,
Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 1998.

Decided Jan. 8, 1999.

states that Licensee's appeal does not involve any disputed facts.

Joseph T. Bodell, Jr., Philadelphia, for appellant.

David J. Stutman, Philadelphia, for appellee.

Before COLINS, President Judge, KELLEY, J., and McCLOSKEY, Senior Judge.

COLINS, President Judge.

The Southeastern Pennsylvania Transportation Authority (SEPTA) appeals the Court of Common Pleas of Philadelphia County order denying post-trial relief in the nature of a new trial after a jury returned a verdict in favor of Chris Wallis.

Wallis sued SEPTA for negligently causing him to be injured while boarding a train on February 6, 1995 at approximately 11:00 p.m. Wallis alleged that as he attempted to board, the train began to move without warning, and that the train conductor was absent from the platform while passengers were boarding in violation of SEPTA's procedures for boarding passengers.[1] Testifying for Wallis

---

1. According to the SEPTA Passenger Operations Instruction Manual: The conductor is responsible to ensure that all passengers are able to safely board or exit the train, and the conductor signals the engineer when the train may safely proceed. The conductor is to position him- or herself on

were Edward Wandall and Elizabeth McCoy, who witnessed the accident from a car parked adjacent to the platform. McCoy testified that the train began to move forward as Wallis stepped onto it;[2] Wandall testified that the train began to move as Wallis was trying to board and that the train's movement caused his foot to slip off the train step.[3] Both witnesses stated that they did not see a conductor on the platform. SEPTA produced no witness to say that the train was already moving when Wallis attempted to board.

On cross-examination, Wallis acknowledged that he understood that it is dangerous to board a moving train and that signs at the train station warn passengers of that danger. He also acknowledged that although he did not see a conductor, he did not specifically look for a conductor on the platform. Counsel for SEPTA attempted to impeach Wallis's testimony that the train was not moving when he attempted to board using a statement written by an emergency medical technician (EMT).[4] Wallis testified that he made no such statement to the EMT and that he did not know why the EMT wrote it.

The jury rendered a verdict in favor of Wallis after finding SEPTA 80 percent negligent and Wallis 20 percent negligent in causing his injuries. In post-trial motions, SEPTA requested a new trial based on two alleged errors. First, SEPTA alleged that the trial judge erred in refusing to charge the jury on the defense of Wallis's assumption of the risk; SEPTA contended that conflicting evidence was before the jury as to whether the train was moving when Wallis attempted to board. Second, SEPTA alleged that the trial judge erred in improperly limiting its cross-examination of Wallis in an attempt to impeach his testimony with respect to whether the train was moving when he attempted to board and whether he saw the conductor on the platform before the accident. The trial court denied SEPTA's post-trial motion after oral argument, and this appeal followed.

■ When considering a trial court's denial of a motion for a new trial, our review is limited to determining whether the trial court abused its discretion or committed clear legal error. *Milan v. Commonwealth*, 153 Pa.Cmwlth. 276, 620 A.2d 721 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 535 Pa. 650, 633 A.2d 154 (1993).

■ A trial judge's instructions to the jury must crystallize the issues raised by the litigants and explain the relevant principles of law. *Hrivnak v. Perrone*, 472 Pa. 348, 372 A.2d 730 (1977). Instructions must be confined to the issues raised in the pleadings and facts developed by evidence in support of those issues. *Hronis v. Wissinger*, 412 Pa. 434, 194 A.2d 885 (1963). The court should not instruct the jury on law that is not applicable to the facts of the case. *Nye v. Commonwealth*, 331 Pa.Super. 209, 480 A.2d 318 (Pa.Super.1984).

### Assumption of the Risk

■ In *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993) (plurality opinion), the Pennsylvania Supreme Court abolished as-

---

the platform while the train is receiving or discharging passengers. A station employee is to observe the platform until the entire train clears the platform. (Notes of Testimony (N.T.), pp. 2.150–2.152.) As part of his case, Wallis attempted to show that the conductor abdicated those responsibilities, and that after the accident the train stopped only after a passenger told the conductor to stop the train. (N.T., pp. 1.22–1.23.)

2. McCoy testified: "[H]e stepped onto the lowest step of the train and put his hand up on the right-hand rail and the train just took off, came out from under him.... He kind of got banged around like a rag doll and spun and then he landed behind the train on the tracks." (N.T., p. 2.70.)

3. Wandall testified: "There was [sic] two people on the platform that were getting on the train and he got right behind them.... He reached up with his right hand and I guess his right foot to step onto the step.... [T]he train lurched forward and started moving with him trying to get on it. His foot slipped off." (N.T., pp. 2.100 and 2.101.)

4. The EMT wrote: "Pt. stated he jumped out of friend's car to catch the train that was pulling away from station—ran and grabbed onto train...." (Defense Exhibit 1.)

sumption of the risk [5] as an affirmative defense to be decided by a jury; rather, to the extent that an assumption of the risk analysis applies in a given case, the court must apply it as part of its duty analysis. The doctrine is to be applied only in cases involving an express assumption of risk, in cases brought under a strict liability theory, and in cases in which the doctrine is preserved by statute. *Id.* In *Duquesne Light v. Woodland Hills School District,* 700 A.2d 1038 (Pa.Cmwlth. 1997), *petition for allowance of appeal denied,* —— Pa. ——, —— A.2d —— (No. 661 W.D. Alloc. Dkt.1998, filed June 15, 1998), this Court adopted the rationale of *Howell* as controlling precedent.[6]

In *Howell* the Supreme Court explained that the assumption of the risk doctrine frustrates the policies underlying the Commonwealth's comparative negligence statute [7] because the doctrine completely bars recovery, regardless of whether the plaintiff's decision to assume the risk is reasonable or unreasonable, and regardless of whether the plaintiff is not greater than 50 percent negligent. Pennsylvania law states that contributory negligence shall not bar recovery of a plaintiff where his or her causal negligence is not greater than that of the defendant; any award of damages is reduced in proportion to the amount of the plaintiff's contributory negligence. 42 Pa.C.S. §7102.

When a trial judge applies assumption of the risk as part of the duty analysis, the "court may determine that no duty exists only if reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity

that produced his injury." *Howell,* 533 Pa. at 162, 620 A.2d at 1113. The present case does not involve a claim of strict liability or statutory preservation of the doctrine. Assumption of the risk would apply only if the facts established an express assumption of the risk. In this case, the trial judge refused to issue an instruction on assumption of the risk because Wallis and the two eyewitnesses to the accident all testified that the train was not moving when Wallis attempted to board. Given the uncontroverted [8] evidence that the train was not moving, the trial court correctly refused to give the instruction because Wallis could not have assumed the risk of boarding a moving train.

Even if we were to ignore the precedent as stated in *Howell, Duquesne Light,* and *Struble,* under traditional negligence principles, the facts in this case would not support the conclusion that Wallis either expressly or impliedly assumed the risk of boarding a moving train because all of the witnesses said that the train was not moving. In all of the cases SEPTA cites for the proposition that assumption of the risk may be submitted to a jury, the instruction was proper only where there was evidence that the plaintiff voluntarily encountered a known risk. For example, in *Handschuh v. Albert Development,* 393 Pa.Super. 444, 574 A.2d 693 (Pa.Super.1990), the Superior Court found no error when the trial court refused to instruct the jury on assumption of the risk where the plaintiff was aware of the general danger associated with working in a trench, but there was no evidence that he agreed to relieve the contractor of the obligation to exercise the proper care for his safety. In

---

**5.** As stated in *Howell,* four types of assumption of risk are set forth in the Restatement (Second) of Torts, §496A cmt. c (1965). To paraphrase, the four types are as follows: 1. The plaintiff expressly consents to relieve the defendant of any obligation to exercise care and agrees to take the chance of injury from a known or possible risk. 2. The plaintiff voluntarily enters a relation with the defendant that he knows to involve risk and the plaintiff is regarded as tacitly agreeing to relieve the defendant of responsibility. 3. The plaintiff is aware of risk created by the defendant and proceeds voluntarily to encounter it. 4. The plaintiff's voluntarily encountering a known risk is unreasonable and amounts to contributory negligence, and the plaintiff is barred from im-

posing on the defendant a loss for which his own negligence is partly responsible.

**6.** *See also Struble v. Valley Forge Military Academy,* 445 Pa.Super. 224, 665 A.2d 4 (Pa.Super.1995), in which the Superior Court also follows *Howell.*

**7.** 42 Pa.C.S. §7102.

**8.** The only evidence that suggests the train might have been moving consisted of prior inconsistent statements used by SEPTA on cross-examination in its attempts to impeach Wallis and the eyewitnesses.

contrast, *Dilauro v. One Bala Avenue Associates,* 419 Pa.Super. 191, 615 A.2d 90 (Pa.Super.1992), and *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983), where an instruction was deemed proper, both involved business invitees who testified at trial that they proceeded voluntarily when faced with a known and obvious danger. In this case the judge properly refused to instruct the jury on law not applicable to the facts of the case.

**Cross–Examination**

Second, SEPTA alleges that the trial court improperly limited its cross-examination of Wallis and its ability to impeach his testimony. After reviewing the testimony in question, we are convinced that the trial judge committed no error in this respect. In each instance of alleged error the judge sustained objections to questions that were repetitive and called for speculation. The judge permitted SEPTA's counsel to cross-examine Wallis with respect to a statement he purportedly made to an emergency medical technician at the train station immediately after the accident, and with respect to whether he saw a conductor on the platform while the train was loading passengers. The judge did not permit repeated questioning once Wallis had answered.

 The judge properly sustained objections to questions about the EMT's state of mind when he recorded Wallis's purported statement at the accident scene. Counsel for SEPTA asked Wallis in three different ways why the statement was inaccurate and why the EMT would record a statement that was not accurate, (N.T., p. 2.38), and the judge properly sustained objections on the ground that Wallis could not testify as to the EMT's state of mind and on the ground that the questioning was repetitive, (N.T., pp. 2.38 and 2.40). The judge asked counsel where he was going with the questions; counsel answered that he had already pursued the only available avenue of impeachment (N.T., pp. 2.41–2.42).

Although the trial judge properly terminated the cross-examination on grounds of repetition and Wallis's inability to testify as to the EMT's state of mind, the court could have precluded the impeachment altogether on the ground that the statement constituted the EMT's summary, or interpretation, of Wallis's words at the time of the accident. The Supreme Court has ruled that a written report that is only a summary of the victim's words and not verbatim notes, cannot be used to impeach the witness on cross-examination because it would be unfair to allow a witness to be impeached on another person's interpretation of what was said rather than the witness's verbatim words. *Commonwealth v. Simmons,* 541 Pa. 211, 662 A.2d 621 (1995).

 The judge also properly sustained objections when SEPTA's counsel attempted to impeach Wallis's testimony using a written statement made by Wandall. An attorney may attempt to impeach a witness on the basis of contrary evidence through another witness, or on the basis of the witness's own prior inconsistent statement. One may not impeach a witness on the basis of another witness's prior inconsistent statement. In this case, Wandall testified in person and his prior inconsistent statement was used to impeach his testimony on cross-examination. The judge did not err in refusing to permit SEPTA's counsel to use Wandall's statement—which consisted of contrary evidence in the form of a written statement introduced for the truth of the matter stated—to impeach Wallis.

Accordingly, the order of the trial judge is affirmed.

### ORDER

AND NOW, this 8 [th] day of January, 1999, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.