**Ritz v. Crozer Chester Medical Center**

182

C.P. of Delaware County, no. 94-111.

*Francis J. Curran Jr.* and *Linda Ferrara,* for plaintiffs.

*Leah B. Perry* and *Kathleen D. Foley,* for defendant.

McGOVERN, *J.,* October 5, 1999—Plaintiffs, Lawrence L. Ritz and Donna M. Ritz, have appealed from the denial of their motion for post-trial relief in the form of a motion for new trial.

Plaintiff, Lawrence L. Ritz, came to the defendant hospital in Upland, Delaware County, Pennsylvania as a delivery driver on behalf of his employer, United Parcel Service, at approximately 9:30 a.m. on January 7, 1994. An employee of UPS for 10 years and its regular delivery driver to defendant, Crozer Chester Medical Center, for four years, plaintiff began his deliveries that morning by unloading half of his packages at the rear of the hospital. (5/7/98 N.T. 128-29.) At 11:30 a.m., plaintiff proceeded to the professional office building, an office complex separate from the hospital facility, and parked in an area designated for deliveries.[1] (5/7/98 N.T. 129-30.)

A severe ice storm which had developed during the early morning hours caused a thin layer of ice to form on roads and other surfaces in the area. (5/11/98 N.T. 63-65.) During his first three trips up the walkway connecting the parking area to the office building, plaintiff noticed that the incline was slippery and asked a security

---

1. It was contested at trial whether the walkway used by plaintiff to access the office complex from the parking area was designated for deliveries. Plaintiff contends he was instructed to use the walkway, while defendant insisted that the route taken by plaintiff was not a designated delivery entrance. (5/7/98 N.T. 149; 5/11/98 N.T. 128.)

guard to throw cinders on the path to help improve his traction. (5/7/98 N.T. 206, 214.) On his fourth and final trip up the walkway, plaintiff loaded 210 pounds of computer paper onto his cart, but as he proceeded up the walkway, the wheels of the dolly became lodged in a gap in the pavement, causing plaintiff to lose his balance and fall. (5/7/98 N.T. 138.) Uninjured, plaintiff pulled himself up, reloaded the cart, and was proceeding further up the walkway when the wheels of the cart became wedged in another crack, causing plaintiff to fall a second time, landing on his tail bone. (5/7/98 N.T. 139; exhibits P-6, P-7, P-9 and P-10.) As a result of this second fall, plaintiff experienced pain in his lower back and later sought treatment at the emergency room of Fitzgerald Mercy Hospital. (5/7/98 N.T. 140-41.) The examining physician noted that plaintiff suffered from bruising and pain in his lower back, but had no numbness or weakness in his legs. (5/7/98 N.T. 220.)

The defendant counters that there were alternative entrances for plaintiff to use that day, that plaintiff was voluntarily taking a shortcut for his own convenience, that plaintiff was familiar with the condition of that particular walkway, and was himself negligent in its use. Defendant asserts, as well, that the injuries complained of had resolved, and that the long-term pain alleged by plaintiff is, in fact, merely a symptom of congenital spinal stenosis, or narrowing of the opening of the spinal canal.

After six months of physical therapy, plaintiff returned to work at UPS in August 1994. (5/7/98 N.T. 224.) He subsequently participated in a "work hardening program" under the observation of an occupational therapist employed by UPS from October 1994 until

April 1995. (5/7/98 N.T. 224, 227-28.) In June of 1995, plaintiff signed a general release and settlement agreement with UPS terminating his employment with the company.[2] (5/7/98 N.T. 227.) Plaintiff later instituted this litigation, alleging that defendant hospital negligently failed to correct defects in the walkway's broken concrete, remove snow and ice from the walkway, and maintain their premises in a safe manner. (Plaintiffs' complaint, paragraph 10, sections c, m, n.) Defendant's motion for summary judgment was denied on February 27, 1998, and the matter proceeded to trial.

On May 12, 1998, a jury found both the defendant, Crozer Chester Medical Center, and the plaintiff negligent, and that the negligence of both parties was a substantial factor in bringing about the harm to the plaintiff, Lawrence Ritz. The jury attributed 20 percent of the causal negligence to the defendant hospital and 80 percent thereof to the plaintiff, thus not reaching the question of damages. Plaintiffs' motion for post-trial relief was denied, and plaintiffs submit the following concise statement of matters complained of on appeal:

"(1) The trial court . . . erred in allowing the defendant to inject into the case the workers' compensation commutation which was accepted by plaintiff, Lawrence Ritz.

"(2) The trial court committed an error of law or abuse of discretion in denying plaintiffs' motion for post-trial

---

2. According to plaintiffs' brief in support of their motion for post-trial relief (p. 5), plaintiff filed for and received workers' compensation benefits which were commuted to the lump sum of $90,000. There is no dispute whatsoever that the amount of the commutation was never introduced at trial or that the "buy-out" agreement was never read in its entirety to nor seen by the jury.

relief in admitting the testimony of defendant's engineering expert, Serge Borichevsky, in that:

"(a) An engineering expert was not necessary in this case as the condition of the walkway and cause of the accident were easily understood by the jurors;

"(b) The trial court erred in permitting Mr. Borichevsky to state his opinion that plaintiff's falls were as a result of plaintiff's own negligence and recklessness." Plaintiffs' issues on appeal are discussed under appropriate headings below.

## ADMISSIBILITY OF TESTIMONY REGARDING WORKERS' COMPENSATION "BUY-OUT" AGREEMENT

Plaintiffs contend that the court erred in allowing defense counsel to read into evidence and question plaintiff and several other witnesses regarding a "General release and settlement (or 'buy-out') agreement" signed in conjunction with the above-mentioned workers' compensation commutation between plaintiff, Lawrence Ritz, and his employer, United Parcel Service. (Plaintiffs' statement of matters complained of on appeal, paragraph 1.) Plaintiffs allege that allowing defendant to introduce the agreement into evidence and cross-examine the plaintiff and other witnesses regarding its terms, resulted in the jury's being "bombarded" with the idea that plaintiff, Lawrence Ritz, received a sum of money from his employer. Plaintiffs contend that the court ignored its granting of plaintiffs' motion in limine to preclude such evidence, and that the introduction of such is prohibited under Pennsylvania law and the collateral source rule.[3]

---

3. Plaintiffs say that their motion in limine to preclude the introduction at trial of any evidence that plaintiff was compensated by his workers' compensation carrier or paid $90,000 for future wages lost was granted by this court. This information is according to plaintiffs'

(Plaintiffs' brief in support of motion for post-trial relief, p. 7.)

Plaintiffs correctly assert that it is an error of law for a jury in a personal injury action to be informed that a plaintiff received compensation for injuries from a third-party source, such as workers' compensation. See *e.g., Boudwin v. Yellow Cab Co.,* 410 Pa. 31, 33, 188 A.2d 259, 260 (1963); *Lobalzo v. Varoli,* 409 Pa. 15, 17, 185 A.2d 557, 559 (1962); *Boscia v. Massaro,* 365 Pa. Su-

---

brief in support of their post-trial motion. Plaintiffs neither sought nor provided recapitulation of any unrecorded sidebar or robing room discussion during which this alleged ruling may have issued, and requested augmentation of the printed transcript only to include plaintiffs having filed a motion in limine to preclude the expert testimony of Serge Borichevsky P.E. and the court's denial of that motion, pursuant to Pennsylvania Rule of Appellate Procedure 1926. (See plaintiffs' petition to conform record of trial, available in the record.) Moreover, there is no mention of the precluded testimony in the transcript. Recorded, however, at the close of testimony, is plaintiffs' request for a jury instruction asking the jury to disregard references to the buy-out agreement elicited by the defense. (5/11/98 N.T. 255-57.) That request was denied with the court's ruling that defense references to the "buy-out" agreement went to the issue of plaintiff's "desire, willingness and motivation to work. [It] doesn't have anything to do with the amounts or the amounts he may have been paid from other sources." (5/11/98 N.T. 256-57.) Plaintiffs then moved for a mistrial, and that motion too was denied. (5/11/98 N.T. 257.) Plaintiffs themselves went on to mention in their closing argument the "buy-out" agreement in terms of plaintiffs' current bankruptcy proceedings and mortgage foreclosure, raising an inference that any amount in question was insufficient to prevent such calamities. (5/12/98 N.T. 32.) Plaintiffs took no exception to the instruction given as related to the evidence they contend was erroneously admitted, and make no claim on appeal regarding the denial of the request for such an instruction nor the motion for mistrial. This issue should, in fact, be deemed waived because it was only the plaintiffs who brought to the jury's attention the suggestion as to any putative monetary value of the "buy-out" agreement.

188

per. 271, 276, 529 A.2d 504, 506 (1987). Referred to as the collateral source rule, this principle bars the introduction of evidence such as workers' compensation benefits in order to assure that a jury will not be led to believe that a plaintiff, by bringing suit in addition to receiving compensation from a third-party collateral source, is seeking a double recovery. *Moorhead v. Crozer Chester Medical Center,* 705 A.2d 452, 455 (Pa. Super. 1997); *Johnson v. Beane,* 541 Pa. 449, 456, 664 A.2d 96, 100 (1995); *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corp.,* 504 Pa. 618, 623, 476 A.2d 350, 352 (1984). However, the rule does not act as an absolute bar to evidence introduced at trial regarding third-party compensation agreements.

It is well recognized that the mere mention of a collateral source, such as insurance, during trial does not constitute an error of law; rather, the complaining party must prove prejudice as a result of such testimony. *Havasy v. Resnick,* 415 Pa. Super. 480, 497, 609 A.2d 1326, 1334 (1992); *Phillips v. Schoenberger,* 369 Pa. Super. 52, 59, 534 A.2d 1075, 1078 (1987); *Pushnik v. Winky's Drive In Restaurants Inc.,* 242 Pa. Super. 323, 335, 363 A.2d 1291, 1297 (1976). Furthermore, Pennsylvania courts have recognized that admitting evidence of a collateral source is permissible where the evidence is relevant to a contested issue in a case, here being the plaintiff's readiness and willingness to work, and where the purpose of the evidence is not to diminish plaintiff's award of damages. *Beechwoods Flying Service Inc. v. Al Hamilton Contracting Corp., supra; Sperry v. White Star Lines Inc.,* 315 Pa. 361, 172 A. 646 (1934); *Rice v. Shenk,* 293 Pa. 524, 143 A. 231 (1928).

The court respectfully submits that it did not err in allowing counsel for the defendant to question any witness regarding noneconomic aspects of the "buy-out" agreement since this information was relevant to a contested issue in the case, and did not indicate to the jury that plaintiffs were seeking a double recovery. There is no evidence of record that the court allowed defendant to present evidence that plaintiff was either compensated by his workers' compensation carrier or that he was paid the $90,000 to compensate him for future wages lost, as plaintiffs allege. Plaintiffs, in instituting this litigation against defendant hospital, claimed that due to plaintiff, Lawrence Ritz's, injuries, he was forced to terminate his employment with UPS, and thus suffered a decreased earning capacity. (Plaintiffs' brief in support of their motion for post-trial relief, p. 8.) Plaintiff testified that he left UPS involuntarily because his employer informed him he could no longer perform the required duties. (5/7/98 N.T. 158.) To counter these contentions, defense counsel inquired on cross-examination about the terms of the agreement which ended plaintiff's employment:

"Q. When you terminated your employment with United Parcel Service, that was a voluntary decision on your part. Isn't that right?

"A. No.

"Q. Do you remember entering into an agreement with UPS for a buyout so that you could pursue an active and independent life and that it was in your best interests?

"A. That's what they said. Yes.

"Q. Well, Mr. Ritz, you signed a piece of paper stipulating to that. Isn't that right?

"A. That's right." (5/7/98 N.T. 216.)

No objection was registered by plaintiff to the eliciting of this testimony. Defense counsel then questioned plaintiff regarding the voluntariness of the termination agreement as adduced by plaintiff's signature:

"Q. 'Employee further acknowledges and agrees that his employment with UPS has been permanently and irrevocably ended and he will not seek reemployment with UPS.' Do you see that?

"A. Yes, I do.

"Q. And that is your signature?

"A. Yes, it is . . .

"Q. And as a result of signing that, you received money that you were planning to invest and that that was an agreement that you voluntarily entered into because you were going to invest the money and that would help you to take care of your family and prevent undue hardship. Isn't that correct?

"A. I signed an agreement with UPS as a buyout. It's a formula they come up with. . . ." (5/7/98 N.T. 217-18.)

At this point in plaintiff's testimony, his attorney raised an objection, "just for the record," and the objection was overruled. (5/7/98 N.T. 218.) Plaintiff continued to answer the question without further questioning by the defense and without objection from his own counsel:

"A. . . . They buy you out.

"Q. But my question just was and . . .

"A. Okay.

"Q. I think you answered it, you really don't need to go any further." (5/7/98 N.T. 217-18.)

It is clear from the foregoing portions of cross-examination testimony of the plaintiff, that counsel for the defendant was careful not to venture beyond the terms of

the agreement relevant to the nature of plaintiff's leaving his employment with UPS, and quickly ended the line of questioning when it appeared the plaintiff might reveal prejudicial information, such as the amount of the settlement involved in the agreement. Upon further questioning by the defense, plaintiff admitted, without objection from counsel, that although he was maintaining before this court that he had been forced into signing the agreement, he had claimed before an officer of the administrative tribunal hearing his employment case that the "buy-out" agreement with UPS had been entered into voluntarily. (5/7/98 N.T. 218-19.) It is thus clear from the record that plaintiff's own replies to the foregoing line of questioning in no way implied to the jury that plaintiff sought a double recovery, or, as plaintiffs contend, allowed the jury to infer that plaintiffs were "set for life" as a result of accepting the "buy-out" from UPS. Rather, such questioning was intended to challenge the credibility of plaintiff's assertions that he had left his employment with UPS involuntarily.[4]

Plaintiff complains that the admission of testimony concerning the "buy-out" agreement warrants a new trial because alleged repeated introduction of such evidence tainted the jury's perception of the plaintiff, and "the jury's perception of plaintiff's credibility was of critical importance in this case." (Plaintiffs' brief in support of their motion for post-trial relief, p. 7.) However, plain-

---

4. During deliberations, the jury asked to view a copy of the "buy-out" agreement. However, this request was denied and the jury was properly instructed that the evidence of a "buy-out" agreement was introduced only "to shed some light on the plaintiff's motivations for continuing to work, or for finding work . . . not the terms of the 'buy-out.' " (5/12/98 N.T. 130.)

tiff testified on cross-examination that he had "lost" his job at UPS. (5/7/98 N.T. 190.) Plaintiff further testified that his decision to terminate his employment was not voluntary, while at the same time admitting, without objection, that he had stipulated to having entered into the "buy-out" agreement with UPS so that he "could pursue an active and independent life" and that it was in his own "best interests." (5/7/98 N.T. 216.) A witness may be challenged on cross-examination regarding his or her own prior inconsistent statement and the resulting testimony was, therefore, properly admitted. *Wallis v. SEPTA,* 723 A.2d 267, 271 (Pa. Commw. 1999).[5]

Defense counsel also elicited brief testimony regarding the "buy-out" agreement during lengthy cross-examinations of plaintiff's treating physician, Dr. William C. Murphy; during the videotape testimony of plaintiffs'

---

5. In a response to the defendant's reply brief in this matter, plaintiff asserted for the first time that his statement, that he was told by UPS that he could no longer perform his job, is not inconsistent with the statement that he voluntarily entered into the agreement to commute his benefits. (Plaintiffs' reply brief to defendant's brief in opposition to plaintiffs' motion for post-trial relief, p. 4.) However, the hereinabove-cited testimony from plaintiff that he had lost and was forced to leave this job is indeed inconsistent with his admission to signing the agreement from a desire to pursue a more active and independent life, and that doing so was in his best interests. (5/7/98 N.T. 190, 216.) It is here noted that plaintiff raised no objection to the eliciting of the latter admissions from plaintiff at trial, and any contention as to improper allowance of such testimony by the court should be deemed waived. Pennsylvania Rule of Civil Procedure 227.1(b)(1); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). Plaintiff's assertions that UPS allegedly forced him to sign the "buy-out" contract are equally inconsistent with his admitted statement to the administrative tribunal that he had entered into the agreement voluntarily. (5/7/98 N.T. 216-19.) The jury was left to determine credibility.

vocational expert, Ronald Kaiser Ph.D.; and on redirect examination of defendant's own expert rehabilitation counselor, Irene Mendelsohn. (5/8/98 N.T. 158 (Murphy); 228 (Kaiser); 5/11/98 N.T. 54-55 (Mendelsohn).) Defendant's short line of questioning involving each of these witnesses was restricted solely to their knowledge of plaintiff's agreement to voluntarily terminate his employment with UPS as it compared with allegations of plaintiff that causal negligence of defendant here caused decreased earning capacity, financial problems, or reluctance to leave his employment at UPS. Never was there a mention of workers' compensation benefits or disclosure of the amount granted to plaintiff as a result of the "buy-out" in his testimony.

The limited questioning engaged in by the defendant with plaintiff, Kaiser, Murphy and Mendelsohn remained well within the permissible limits of the preclusion order at trial. Moreover, plaintiffs themselves asked Ms. Mendelsohn to reiterate a statement in her report indicating that plaintiff had at first rejected the "buy-out" agreement before actually entering into it after refusing a supervisory position and other options offered by UPS. (5/11/98 N.T. 51.) Plaintiffs' subsequent objection to defense questioning of Mendelsohn as to her understanding that plaintiff had ultimately accepted the "buy-out" was, therefore, properly overruled. (5/11/98 N.T. 55-58.) Plaintiffs should not be heard to complain of defense references to evidence they themselves had placed into the record. Finally, it is difficult to discern how testimony found on six pages of a trial transcript which encompassed approximately 800 pages of testimony could in any way have "bombarded" the jury with the negative impression contended.

The threshold task for a trial judge in determining the admissibility of evidence is whether the evidence is relevant. *Henery v. Shadle,* 443 Pa. Super. 331, 340, 661 A.2d 439, 444 (1995), *appeal denied,* 542 Pa. 670, 668 A.2d 1133 (1995); *General Equipment Manufacturers v. Westfield Insurance Co.,* 430 Pa. Super. 526, 544, 635 A.2d 173, 182 (1993), *appeal denied,* 537 Pa. 663, 644 A.2d 1200 (1994); *Whyte v. Robinson,* 421 Pa. Super. 33, 38, 617 A.2d 380, 383 (1992). Pennsylvania courts have considered evidence relevant when it helps to establish a fact in issue at trial, or make that fact more or less probable. *Burrell Construction & Supply Co. v. Straub,* 440 Pa. Super. 596, 605, 656 A.2d 529, 534 (1995); *Whistler Sportswear Inc. v. Rullo,* 289 Pa. Super. 230, 243, 433 A.2d 40, 47 (1981). In the case at bar, information concerning plaintiff, Lawrence Ritz's, "buy-out" agreement with UPS (and *not* the amount thereof) was relevant and thus properly admitted to settle a contested issue in the case, that is, whether plaintiff terminated his employment with UPS involuntarily, or whether he had voluntarily accepted a "buy-out" from the company so that he could pursue an independent life and further his own best interests. It would not have been lost on the jury that before plaintiff left his employment with United Parcel Service, he had refused their offer of a supervisory position and other employment options.

Moreover, the evidence of the "buy-out" agreement in no way prejudiced the plaintiffs in their case against the defendant hospital. On the liability issue, a jury found plaintiff 80 percent negligent for causing his own injuries. Having found the plaintiff's contributory negligence greater than the negligence of the defendant, the jury never reached the question of damages. An evidentiary

ruling that does not affect the verdict will not provide a basis for disturbing a jury's judgment. *Hart v. W.H. Stewart Inc.,* 523 Pa. 13, 16, 564 A.2d 1250, 1252 (1989). Therefore, it is respectfully submitted that this court properly admitted the cited testimony regarding the "buyout" agreement to be admitted at trial.

## ADMISSIBILITY OF TESTIMONY OF ENGINEERING EXPERT, SERGE BORICHEVSKY

Plaintiffs contend that the court erred in permitting the defendant's engineering expert, Serge Borichevsky, to testify as to the condition of the walkway and the cause of the fall, and to offer his opinion that the fall was a result of plaintiff's own negligence and recklessness. (Plaintiffs' statement of matters complained of on appeal, paragraph 2, sections a and b.) Plaintiffs believe that the nature of the accident was one which jurors could easily comprehend, and, as such, did not warrant an expert opinion.[6]

It must first be noted that an in limine motion is a motion or petition submitted to the court in a pending matter either pretrial or during trial whereby exclusion is sought of anticipated prejudicial evidence, keeping extraneous issues out of the underlying proceeding, precluding reference to prejudicial matters, or preventing encumbering the record with immaterial matter. *PennDOT v. Pikur Enterprises Inc.,* 142 Pa. Commw. 114, 596 A.2d 1253 (1991). "A trial court may or may

---

6. The court, during an untranscribed robing room conference, denied plaintiffs' motion in limine to preclude the expert testimony of Serge Borichevsky. On November 25, 1998, the court ordered that the trial transcript be supplemented to reflect the denial of the motion pursuant to plaintiffs' petition to conform the record.

not in its discretion, entertain such in limine motions and the denial thereof cannot in and of itself constitute reversible error since those matters seeking to be precluded have not been presented to the fact-finder and may never reach the fact-finder." *PennDOT v. Pikur Enterprises Inc., supra,* 142 Pa. Commw. at 127, 596 A.2d at 1259, citing 75 Am.Jur.2d *Trial* §165 (1974); 60 C.J.S. *Motions and Orders* §2 (1969); Black's Law Dictionary 787 (6th Ed. 1991); 21A Words and Phrases, "In Limine" (1991). The transcript does not indicate that the conference at which plaintiffs' motion was denied took place at the time of Mr. Borichevsky's testimony, but it does reflect that plaintiffs raised no objection to defendant's motion to allow Borichevsky to testify as an expert witness. (5/11/98 N.T. 158, 168.) If this issue should not be deemed waived for that reason, regardless of the timing of plaintiffs' in limine motion, Mr. Borichevsky's testimony was properly admitted under law.

It is true, as plaintiffs contend, that expert testimony is deemed unnecessary at trial for matters of common knowledge that the jury is capable of comprehending without assistance. *Reardon v. Meehan,* 424 Pa. 460, 465, 227 A.2d 667, 670 (1967); *Collins v. Zediker,* 421 Pa. 52, 53, 218 A.2d 776, 777 (1966); *Burton v. The Horn & Hardart Baking Co.,* 371 Pa. 60, 64, 88 A.2d 873, 875 (1952). Expert testimony has been held to be inadmissible where the issue relates solely to the slipperiness of a surface fallen upon by an individual. *Burton v. The Horn & Hardart Baking Co., supra.* Conversely, expert testimony is admissible when it involves explanations and inferences not within ordinary training and knowledge of the jury. *Kubit v. Russ,* 287 Pa. Super. 28, 35,

429 A.2d 703, 706 (1981); *Auerbach v. Philadelphia Transportation Co.,* 421 Pa. 594, 604, 221 A.2d 163, 171 (1963); *Daniels v. County of Allegheny,* 145 F. Supp. 358 (W.D. Pa. 1956). The record reflects that the testimony offered by Mr. Borichevsky regarding engineering and construction principles for the walkway and the mechanics causing plaintiff to fall while pulling a hand truck loaded with some 210 pounds of computer paper up an icy incline, after making three prior trips carrying lighter loads without incident, would have exceeded a layperson's understanding, and, as such, was properly presented to the jury by an expert in the field.

The Pennsylvania Supreme Court has held that expert testimony is necessary to establish negligent practice in any profession. *Powell v. Risser,* 375 Pa. 60, 65, 99 A.2d 454, 456 (1953). The record indicates, and plaintiffs do not contest, that Mr. Borichevsky, a civil engineer, was well qualified to speak to liability issues in the case so as to establish the contributory negligence of the plaintiff. In evaluating whether the condition of the walkway posed a tripping hazard to a professional deliveryman pulling a heavy load up an icy incline, Mr. Borichevsky proffered the following explanation to the jury:

"A. Well, it's the weight, 200 pounds of computer paper or mushrooms or Hershey bars, it's still 200 pounds. The amount of force it takes to pull a cart is dependent on two things, the slope of the—of the surface that you are pulling it up. If you're pulling it uphill, the steeper the surface the more weight you have to pull. If it's level, if it's downhill, then it's less, in fact, it pushes you because you're basically dealing with gravity. The other thing is the friction in the wheels as the wheels turn. If you don't have the wheels, for example, greased nicely

and there's a lot of rust in them, they don't turn very well. It takes more force to pull up.

"So it's two things, it's the weight of the cart . . . the slope that you're pulling it up and the friction in the wheels. Friction in these wheels is very low . . . it's going to take 14 pounds of pull because most of the load is sitting on the wheels . . . So it's 14 pounds for the load and two pounds approximately for the rolling friction so that's 16 pounds. You've got to counteract 16 pounds of pull up the hill." (5/11/98 N.T. 190-91.)

Elaborating on these scientific principles of matter and motion, Mr. Borichevsky described to the jury the mechanics involved in plaintiff, Lawrence Ritz's, final excursion up the sloped walkway on January 7, 1994.

"He had approximately, depending on the coefficient of friction of the ice . . . between six and 20 pounds of traction in his feet and he's pulling 16 pounds of load. So he's—if, at any time, his traction between his feet and the ice is below 16 pounds, he's going to fall. It's just like if you . . . hitched up a car . . . at the bottom of the sidewalk and tried to pull the car up the sidewalk, you wouldn't be able to do that. You would slip . . . even if it was bare concrete. Why? Because the force that you need to pull the car up the sidewalk, you can't build that up between your feet and the pavement. And that's what happened here, he didn't have enough force." (5/11/98 N.T. 191-92.)

Plaintiffs suggest that the jury could determine defendant's negligence merely from the condition of the sidewalk. Such has been held to be generally so except where additional factors contributing to a fall on a slippery surface might involve knowledge outside of the ken of the ordinary layperson. *Miller v. Philadelphia,* 345

Pa. 1, 25 A.2d 185 (1942); *Burton v. The Horn & Hardart Baking Co., supra; Daniels v. County of Allegheny, supra.* It is also true that the presence of ice on a property does not automatically establish the owner's negligence. *Jacob v. Philadelphia,* 333 Pa. 584, 5 A.2d 176 (1939). The Pennsylvania Supreme Court has recognized that an expert witness may attest to a relevant fact not generally known, but known to the expert because of special training and knowledge. *Reardon v. Meehan,* 424 Pa. 460, 465, 227 A.2d 667, 670 (1967). It is, therefore, respectfully suggested that Mr. Borichevsky could best explain the principles of physics, as well as the mechanics of plaintiff's fall under the unique circumstances presented here, and that those circumstances did not present an experience common to the average juror.

It is the law of this Commonwealth that the question of admissibility of expert testimony is well within the discretion of the trial court. *Lebesco v. SEPTA,* 251 Pa. Super. 415, 419, 380 A.2d 848, 850 (1977); *Colston v. SEPTA,* 679 A.2d 299, 303 (Pa. Commw. 1996); *Palmer v. Lapp,* 392 Pa. Super. 21, 27, 527 A.2d 12, 15 (1990). It is respectfully submitted that the court did not abuse its discretion in allowing the expert testimony of Mr. Borichevsky. Rather, the court properly admitted this testimony to aid the jury in fully understanding the matter at hand.

Plaintiffs further contend that they should be granted relief because the court allegedly erred in permitting Mr. Borichevsky to offer an opinion going to an ultimate issue in the case. (Plaintiffs' statement of matters complained of on appeal, paragraph 2, section b.) Plaintiffs' allegation, however, is without merit. Pennsylvania courts hold that an expert may offer an opinion relating

to the ultimate issue in the case. *First Methodist Episcopal Church v. Bangor Gas Co.,* 388 Pa. 115, 130 A.2d 517 (1957); *Christiansen v. Silfies,* 446 Pa. Super. 464, 475, 667 A.2d 396, 404 (1995). Indeed, the new Pennsylvania Rules of Evidence, which became effective some five months after the within trial, state that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Pa.R.E. 704. The comment to the rule reiterates well-settled authority in this jurisdiction in pronouncing that "Pennsylvania law allows expert opinion testimony on the ultimate issue," citing *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978); *Cooper v. Metropolitan Life Insurance Co.,* 323 Pa. 295, 186 A. 125 (1936).

Plaintiffs contend that by giving his opinion on the cause of plaintiff's fall, Mr. Borichevsky usurped the function of the jury. Plaintiffs specifically take issue with the following testimony:

"A. . . . I believe (the fall was a result of) Mr. Ritz being careless and reckless . . . [F]irst of all he was aware of the condition of the sidewalk that he was walking on and its effects on his loaded hand truck that he was pulling . . . Second of all, he was aware that the ice was slippery. He had difficulty transversing it. . . . The next reason is that he knew there were alternative ways to go to get to the same place." (5/11/98 N.T 173-74.)

The Pennsylvania Supreme Court held in *Commonwealth v. Daniels, supra,* that, "[T]he witness, in expressing his opinion, is not attempting to usurp the jury's function; nor could he . . . because the jury may still reject his opinion." 480 Pa. at 352, 390 A.2d at 179. In the case at bar, the expert witness, Mr. Borichevsky, properly of-

fered an opinion subject to evaluation by the jury as to plaintiff's contributory negligence. Furthermore, the witness, contrary to plaintiffs' assertion, did not challenge plaintiff, Lawrence Ritz's, credibility. *Kozak v. Struth,* 515 Pa. 554, 531 A.2d 420 (1987). Rather, he properly offered an expert opinion based on facts readily available in the record. Further, while the court, as noted in the transcript above cited, is of the opinion that Mr. Borichevsky was simply stating the reasons for the opinion he had already expressed, it is recognized that the cold language in the transcript might suggest that such involved the ultimate issue in this case. The trial court, however, instructed this jury before the trial began, and before the jury initiated its deliberations, that it was the sole responsibility upon the jury to determine the facts and circumstances in this case based upon the evidence as they received it. The jury was further instructed at the conclusion of the trial that they were not bound to accept any expert testimony, but rather were to evaluate that testimony in light of the reasons expressed by the expert and make a determination as to whether or not those reasons were supported by the evidence in this matter that they found to be credible and worthy of some weight. (5/12/98 N.T. 85-91.) There is no hint of unfair prejudice to the plaintiff from the engineer's opinion and, further, the record amply supports the jury's conclusion independently of the questioned testimony.

Pennsylvania courts have commonly held that the discretion to admit or exclude an expert's opinion on an ultimate issue in a case is vested with the trial judge. *Commonwealth v. Barnhart,* 722 A.2d 1093, 1097 (Pa. Super. 1998). A trial court will not be reversed in ruling upon the admissibility of testimony to the ultimate issue

in the case unless the court clearly abused its discretion and actual prejudice occurred. See *Childers v. Power Line Equipment Rentals Inc.,* 452 Pa. Super. 94, 112, 681 A.2d 201, 210 (1996); *Swartz v. General Electric Co.,* 327 Pa. Super. 58, 71, 474 A.2d 1172, 1178 (1984). It is the belief of the court that Mr. Borichevsky was properly permitted to offer his expert opinion based on facts and not conjecture in order to aid the jury in fully assessing the evidence before them. The plaintiffs, having already presented their case for negligence, having raised no objection to the admission of Mr. Borichevsky as an expert witness, and having taken advantage of their opportunity to cross-examine him, cannot now complain of prejudice from such testimony advanced by the defense. Therefore, plaintiffs' request for a new trial on that basis was properly denied.

## CONCLUSION

Plaintiffs' contentions that the court erred in both the admission of testimony regarding the "buy-out" agreement and the admission of testimony offered by plaintiffs' engineering expert going to plaintiff's contributory negligence are unfounded and unsupported by the law of this Commonwealth. Allowing defense counsel to question plaintiff and other witnesses regarding the "buy-out" agreement does not constitute an error of law since this information was relevant to a contested issue in the case, did not indicate to the jury that plaintiffs were seeking double recovery, and was put before the jury by plaintiffs themselves. Furthermore, the testimony offered by Mr. Borichevsky regarding engineering and construction principles for the walkway and the scientific mechanics of plaintiff's fall under the instant circumstances, clearly

exceeded a layperson's experience and, it is respectfully submitted, was properly allowed as relevant and material to the issues of causation and contributory negligence.

A trial court's ruling on a motion for new trial will not be reversed absent an error of law controlling the outcome of the case or an abuse of discretion where the ruling turns on the weight of the evidence. *United States Fidelity and Guaranty Co. v. Royer Garden Center & Greenhouse Inc.,* 143 Pa. Commw. 31, 598 A.2d 583 (1991). Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion. *Henry v. McCrudden,* 133 Pa. Commw. 231, 575 A.2d 666 (1990), *appeal denied,* 526 Pa. 651, 585 A.2d 470 (1990); *Catina v. Maree,* 272 Pa. Super. 247, 415 A.2d 413 (1979); *Juniata Foods Inc. v. Mifflin County Development Authority,* 87 Pa. Commw. 127, 486 A.2d 1035 (1985). A wide degree of latitude in the determination of whether evidence should be admitted is vested in the trial court. *Lynch v. McStome and Lincoln Plaza Associates,* 378 Pa. Super. 430, 548 A.2d 1276 (1988). It is respectfully suggested that the testimony challenged by the plaintiffs was properly allowed into evidence, and that the decisions to do so do not constitute error of law or abuse of discretion so as to warrant a new trial.

For all of the foregoing reasons, it is respectfully submitted that plaintiffs' post-trial motion was appropriately denied.