J-S59013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LUIS G. ZAYAS CINTRON | : | |
| | : | |
| Appellant | : | No. 552 EDA 2018 |

Appeal from the PCRA Order January 5, 2018
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001712-2010

BEFORE: GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED NOVEMBER 28, 2018**

Appellant, Luis G. Zayas Cintron, appeals from the order entered in the Chester County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act at 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The relevant facts and procedural history of this case are as follows. On June 23, 2011, a jury convicted Appellant of attempted murder, two counts of aggravated assault, two counts of simple assault, recklessly endangering another person, terroristic threats, and two counts of possession of an instrument of crime, in connection with Appellant's shooting at Victim on April 6, 2010. On September 7, 2011, the court sentenced Appellant to an aggregate term of 23 years and 4 months to 50 years' imprisonment. This Court affirmed the judgment of sentence on April 5, 2013, and our Supreme Court denied allowance of appeal on September 5, 2013. ***See***

*Commonwealth v. Cintron*, 75 A.3d 545 (Pa.Super. 2013), *appeal denied*, 621 Pa. 663, 74 A.3d 125 (2013).

On March 26, 2014, Appellant timely filed the current *pro se* PCRA petition, raising a claim of trial counsel's ineffective assistance. The court appointed PCRA counsel. On August 29, 2014, PCRA counsel filed a *Turner/Finley*[1] letter and a request to withdraw as counsel. On October 2, 2014, the PCRA court issued notice of its intent to dismiss the petition without a hearing, per Pa.R.Crim.P. 907. Appellant responded *pro se* on October 21, 2014. On October 24, 2014, the court dismissed Appellant's PCRA petition and granted PCRA counsel's petition to withdraw.

On October 13, 2015, this Court vacated the PCRA court's decision and remanded for appointment of new counsel and for further proceedings based on PCRA counsel's failure to address Appellant's ineffective assistance of counsel claim, as well as the PCRA court's failure to address the issue where the PCRA court incorrectly stated the preliminary hearing transcript was not in the certified record. *See Commonwealth v. Cintron*, No. 3189 EDA 2014, unpublished memorandum (Pa.Super. filed Oct. 13, 2015). The court appointed new PCRA counsel on October 14, 2015. New PCRA counsel filed a *Turner/Finley* letter and request to withdraw as counsel on April 22, 2016. On May 26, 2016, the PCRA court issued notice of its intent to dismiss the

_____

[1] *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988); *Commonwealth v. Finley*, 550 A.2d 213 (1988).

petition without a hearing, per Rule 907 and, on January 30, 2017, the court granted new PCRA counsel's petition to withdraw.

On February 2, 2017, the PCRA court appointed current counsel, who filed an amended petition on June 26, 2017, to raise Appellant's ineffective assistance of trial counsel claim. On October 11, 2017, the PCRA court issued notice of its intent to dismiss the petition without a hearing, per Rule 907 and, on January 5, 2018, the court denied relief. Appellant timely filed a notice of appeal on February 2, 2018. On February 22, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal, per Pa.R.A.P. 1925(b); Appellant timely complied on March 15, 2018.

Appellant raises one issue on appeal:

> DID THE PCRA COURT ERR BY DENYING APPELLANT AN EVIDENTIARY HEARING AND RELIEF PURSUANT TO THE POST-CONVICTION RELIEF ACT?

(Appellant's Brief at 3).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions.

***Commonwealth v. Ford***, 44 A.3d 1190 (Pa.Super. 2012).   Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings.  ***Commonwealth v. Wah***, 42 A.3d 335 (Pa.Super. 2012).

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008).   When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.  ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999).  The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail.  ***Williams, supra***.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…."  ***Commonwealth v. Pierce***, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994).  "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was

- 4 -

designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

***Pierce, supra*** at 524, 645 A.2d at 194-95 (internal citations omitted).

Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [***Kimball, supra***], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

***Commonwealth v. Chambers***, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable William P. Mahon, we conclude Appellant's issue merits no relief. The PCRA court's opinion comprehensively discusses and properly disposes of the question presented. (***See*** PCRA Court Opinion, filed October 11, 2017, at fn. 2) (finding: at trial, Commonwealth introduced exhibit showing table in Appellant's apartment was made of wood; Commonwealth also introduced testimony from Officer Harper describing table in Appellant's apartment as very small and white in color; Appellant attacks trial counsel's failure to impeach Victim's trial testimony with Victim's testimony at preliminary hearing, during which Victim stated he was sitting at table with Appellant in

Appellant's apartment and could see Appellant pull gun out of his waistband through glass table; nevertheless, review of record does not show Victim testified inconsistently at trial; at preliminary hearing, Victim testified about composition of "dining room" table but at trial, Victim did not testify about composition of table; record is unclear regarding whether there was more than one table in Appellant's residence; thus, nothing in Victim's preliminary hearing testimony was so inconsistent with his trial testimony as to compel conclusion that Appellant was denied use of vital impeachment evidence at trial; Victim testified consistently at both proceedings that he saw Appellant pull gun from his waistband; trial counsel was not ineffective for failing to impeach Victim with his preliminary hearing testimony where testimony from two proceedings was not necessarily inconsistent; moreover; even if trial counsel had impeached Victim with this minor discrepancy concerning physical composition of table, outcome of trial would not have changed, given overwhelming evidence of Appellant's guilt; therefore, Appellant failed to prove prejudice to establish his ineffective assistance of counsel claim; similarly, Appellant cannot show necessary prejudice regarding counsel's failure to question Appellant about Officer Harper's testimony describing table, where Officer Harper's testimony is not irreconcilable with Victim's preliminary hearing testimony that table was glass; Officer Harper did not testify that entire table was white or made of non-transparent material; picture of wood table in Commonwealth's Exhibit 20 was not identified as same table Victim

had described as glass at preliminary hearing; whether Exhibit 20 showed same table Victim described is unclear; for these reasons, Appellant's ineffective assistance of counsel claim fails). Accordingly, we affirm based on the PCRA court's opinion.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/18

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

VS.

: CRIMINAL ACTION (PCRA)

LUIS Z. CINTRON : NO.  1712-2010

Nicholas J. Casenta, Jr., Esquire, Chief Deputy District Attorney
C. Curtis Norcini, Esquire, Attorney for Defendant

## NOTICE OF INTENT TO DISMISS PCRA PETITION PURSUANT TO Pa.R.Crim.P. 907(1)

**AND NOW**, this *11th* day of October, 2017, upon defendant's *pro se* Petition for

Post-Conviction Collateral Relief ("PCRA"), court-appointed counsel's Amended PCRA

Petition,[1] it is hereby **DECREED** as follows: after an independent review of the record,

this Court finds that there are no genuine issues concerning any material fact, and that

the defendant is not entitled to post-conviction collateral relief, and that no purpose

would be served by any further proceedings.

Pursuant to Pa.R.Crim.P. 907(1), Defendant is given **NOTICE** of the Court's

intent to dismiss the *pro se* PCRA petition and counseled amendment without a hearing

twenty (20) days from the date of the docketing of this Order.

Defendant may respond to this **NOTICE** within twenty (20) days of the

docketing of this Order. If Defendant has not responded, a subsequent Order will be

entered dismissing Defendant's PCRA petition and amendment. The subsequent Order

---

[1] Filed with the Court on March 26, 2014 and June 29, 2017, respectively.

1





shall be a final appealable Order disposing of Defendant's PCRA petition and amendment.

If Defendant responds to this **NOTICE**, the Court will: either dismiss Defendant's non-viable PCRA petition and amendments; direct, if warranted, that Court Appointed Counsel review Defendant's response; or, if warranted, direct that further proceedings be held.

The Clerk of Courts of Chester County is hereby **ORDERED** to serve a copy of this Order upon the following:

    (a)    District Attorney of Chester County.

    (b)    Defense Counsel.

    (c)    Defendant – **by Certified Mail, Return Receipt Requested.**

BY THE COURT:

William P. Mahon,  J.[2]

---

[2] **FACTS AND PROCEDURAL HISTORY**

Following a three day trial by jury, Luis Zayas Cintron ("Defendant") was found guilty on June 23, 2011 of the following crimes: one (1) count of Criminal Attempt to Commit Criminal Homicide, two (2) counts of Aggravated Assault, two (2) counts of Simple Assault, two (2) counts of Possessing Instruments of Crime ("PIC"), and one (1) count each of Recklessly Endangering Another person ("REAP") and Terroristic Threats.

On September 7, 2011, Defendant was sentenced on those crimes. On the charge of Criminal Attempt to Commit Criminal Homicide, Defendant was sentenced to a term of imprisonment of twenty (20) to forty (40) years. On the charge of PIC, Defendant was sentenced to sixteen (16) to sixty (60) months imprisonment to be served consecutive to the charge of Criminal Attempt. On the charge Terroristic Threats, Defendant was sentenced to a term of imprisonment of two (2) to five (5) years, also

2

to be served consecutive to the sentence for the charge of Criminal Attempt. All other charges merged for purposes of sentencing. Consequently, Defendant's aggregate sentence to be served in a state correctional institution is not less than twenty-three (23) years and four (4) months and not more than fifty (50) years.

On September 16, 2011, Defendant filed a Motion for post-sentence relief, which the Court denied as a matter of law on September 19, 2011. The same day that the Court denied Defendant's Motion for post-trial relief, he filed a direct appeal to the Superior Court. The Superior Court affirmed Defendant's judgment of sentence on April 5, 2013. Commonwealth v. Luis Zayas Cintron, 2505 EDA 2011. Following the Superior Court's affirmation of his judgment of sentence, Defendant petitioned the Pennsylvania Supreme Court for allowance of appeal, which was denied on September 5, 2013. See Supreme Court Order, 9/5/13.

On March 26, 2014, Defendant filed a *pro se* Post-Conviction Relief Act petition. As this was the indigent Defendant's first PCRA Petition, the Court appointed Robert P. Brendza, Esquire, to represent him in all matters pertaining to the Petition. On August 29, 2014, Mr. Brendza petitioned the Court for leave to withdraw as PCRA counsel and filed a "no-merit" letter pursuant to the procedures outlined in Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988).

On September 16, 2014, Defendant filed a Motion for Removal of Court-Appointed Counsel, which the Court denied on September 16, 2014. On October 2, 2014, the Court issued a Notice of Intent to Dismiss PCRA Petition ("907 Notice") without a hearing. In the 907 Notice, the Court explained that it could not address Defendant's claim that trial counsel was ineffective in failing to impeach the victim's trial testimony with his alleged contradictory testimony at the preliminary hearing due to Defendant's failure to file a certified copy of the preliminary hearing transcript. See 907 Notice, 10/2/14, at 11 fn. 1.

Defendant responded to the 907 Notice with several *pro se* objections. Among other issues, Defendant alleged that Attorney Brendza had been ineffective in failing to file certified copies of court records and the preliminary hearing transcript. Def.'s Objections to Notice of Intent to Dismiss, 10/21/14, unpaginated. On October 24, 2014, the Court erroneously dismissed Defendant's PCRA petition and granted Attorney Brendza's Petition to Withdraw. Subsequent to the dismissal of the PCRA petition, a copy of Defendant's preliminary hearing transcript was obtained by the Court and made part of the record. See Order, 6/25/15.

On November 17, 2014, Defendant timely appealed the dismissal of his PCRA petition. On February 9, 2015, the PCRA Court issued its Rule 1925 Opinion. On October 13, 2015, the Superior Court, by Memorandum Opinion, vacated the PCRA Court's October 24, 2014 Order dismissing Defendant's PCRA petition and remanded the matter for further proceedings. Commonwealth v. Luis Zayas Cintron, 3189 EDA 2014. The Superior Court also instructed that new PCRA counsel be appointed and that new counsel conduct an independent review of Defendant's PCRA claims. The Superior Court's remand order stated that new PCRA counsel was free to adopt the reasoning of Mr. Brendza on the issues he addressed following an independent review of all issues. The order also required new PCRA counsel to address, in the first instance, Defendant's claim that trial counsel was ineffective for failing to impeach victim's credibility through the use of the preliminary hearing transcript. Id. at 9.

On October 14, 2015, Alexander L. Silow, Esquire, was appointed as new PCRA counsel to represent Defendant in all matters pertaining to his PCRA petition. On April 22, 2016, Mr. Silow filed a Petition to Withdraw as PCRA Counsel, after concluding that there was no merit to the claim upon which the Superior Court remanded the matter.

3

On May 26, 2016, the Court filed a Notice of Intent to Dismiss Defendant's PCRA petition pursuant to Pa.R.Crim.P. 907(1). Defendant filed objections thereto and a Motion to relieve Mr. Silow as PCRA counsel. On January 30, 2017, this Court entered an Order relieving Mr. Silow as PCRA counsel. On February 2, 2017, C. Curtis Norcini, Esquire, was appointed to represent Defendant on his PCRA petition. On June 26, 2017, Mr. Norcini filed an Amended PCRA petition. On July 26, 2017, the Commonwealth filed its Answer to Defendant's Amended PCRA Petition. On August 5, 2017, Defendant filed a *pro se* Motion for Replacement of Court Appointed Counsel and for Leave to File a Second Amended PCRA Petition. On August 11, 2017, that Motion was granted in part and denied in part. Specifically, the Court ordered Mr. Norcini to review all of the *pro se* issues contained in the Motion and to file of record either a Second Amended PCRA petition adopting Defendant's *pro se* issues or a "No Merit" letter explaining why those issues did not entitle Defendant to relief. All other requested relief was denied. On September 11, 2017, Mr. Norcini filed a "No Merit" letter with the Court reaffirming his previously filed Amended PCRA petition and cogently explaining why he believed the remainder of the *pro se* issues lacked arguable merit.

The underlying facts giving rise to Defendant's judgment of sentence are as follows. On April 6, 2010, at approximately 2:20 p.m., the victim, Francisco Idrovo, arrived home from work to his residence as usual. (N.T., 6/21/11, at 72.) Mr. Idrovo, a man of Hispanic descent, had lived in the United States for nearly 19 years and had worked as a garbage truck driver for 18 of those years. (N.T., 6/21/11, at 60-71.) Mr. Idrovo had at one time been married to a woman named Gloria Moreno and the two had lived in matrimony from 1998 until their divorce in 2004. (N.T., 6/21/11, at 80-81.) In 2010, despite being divorced for nearly six (6) years, Mr. Idrovo and his ex-wife still shared a complicated, though not uncommon, relationship that is best described as on-again-off-again. (N.T., 6/21/11, at 80-81.) At this time, Mr. Idrovo resided at 1127 Manor Road (Route 82), Coatesville, Chester County, Pennsylvania. (N.T., 6/21/11, at 72.)

In his eighteen years in the United States, Mr. Idrovo had done well for himself: his residence included a single-family home located atop of a driveway, a fenced-in pool area located at the bottom of the driveway, and a detached garage above which was an apartment, located to the right of the single-family home. In that apartment lived Defendant, a retired boxer who now coached young boxers, and his wife, Luz Vargas. (N.T., 6/21/11, at 68-69.) Defendant had rented the apartment from Mr. Idrovo and his ex-wife upon Ms. Moreno introducing the Defendant to her husband and negotiating a lease agreement. (N.T., 6/21/11, at 67-72, N.T., 6/23/11, at 40.)

Upon arriving home from work that ill-fated day, Mr. Idrovo entered his home briefly and then, intending to cut his grass, proceeded to his garage to take out his lawnmower. (N.T., 6/21/11, at 73.) As he brought the lawnmower outside, he was approached by Defendant, who said he needed to speak with Mr. Idrovo. (N.T., 6/21/11, at 73.) Obligingly, Mr. Idrovo followed Defendant to Defendant's apartment, whereupon entering, Defendant locked the door to the apartment behind them. (N.T., 6/21/11, at 73.) As Mr. Idrovo took a seat at the kitchen table, Defendant pulled out a gun. (N.T., 6/21/11, at 73-75.) Defendant ordered Mr. Idrovo to place his hands on top of the table and told him not to move. (N.T., 6/21/11, at 73, 77.) He then informed Mr. Idrovo that it was he who had burglarized his home a few weeks prior and that he had been hired by Mr. Idrovo's ex-wife and her boyfriend to kill him for $5000.00. (N.T., 6/21/11, at 73, 77-79.) The Defendant told Mr. Idrovo that he had a recorded message from the boyfriend of Mr. Idrovo's ex-wife that Mr. Idrovo was to listen to. (N.T., 6/21/11, at 73.) The Defendant then proceeded to place a call and a Spanish-speaking woman answered the phone, stating that "they would get there in five minutes." (N.T., 6/21/11, at 73, 78.) Upon hearing this, Mr. Idrovo fled the apartment and proceeded down the driveway toward the pool area and Manor Road (Route 82). (N.T., 6/21/11, at 73.) However, Defendant caught up to Mr. Idrovo, and after telling him not to move, shot Mr. Idrovo in the abdomen. (N.T., 6/21/11, at 73, 81-82.) Defendant then fled up the driveway in

4

the direction of the apartment. (N.T., 6/21/11, at 82.) Badly injured, Mr. Idrovo proceeded to a neighbor's lawn at 1123 Manor Road. (N.T., 6/21/11, at 82.)

Joe Stern, a neighbor of Mr. Idrovo who resides at 1121 Manor Road, was at home watching a television program on that same afternoon, when he suddenly heard a popping noise. (N.T., 6/21/11, at 37.) Believing the sound to be that of a gunshot, Mr. Stern went to his window to try to determine what had happened. (N.T., 6/21/11, at 37-38.) Outside, he saw Mr. Idrovo standing in the lawn of the 1123 Manor Road residence with his arms raised. (N.T., 6/21/11, at 38.) Mr. Stern immediately discerned that Mr. Idrovo had been shot and upon emerging from his home, made eye contact with Defendant who was now standing at the pool fence. (N.T., 6/21/11, at 38.) Mr. Stern then observed Defendant immediately flee the area. (N.T., 6/21/11, at 38.) With the shooter out of sight, Mr. Stern went to Mr. Idrovo's aide while placing a call to 911. (N.T., 6/21/11, at 40.) Mr. Stern picked up Mr. Idrovo, who appeared to be bleeding from his arm and stomach, and carried Mr. Idrovo to his own property where he hid the injured victim behind a rock, in case the Defendant returned. (N.T., 6/21/11, at 41.)

On that same day, off-duty officer Christopher Jason, a police officer with East Coventry Township, was enjoying the afternoon with his young daughter outside their residence on Hurley Road, located in West Brandywine Township, Chester County, Pennsylvania. (N.T., 6/22/11, at 32-33.) Hurley Road is approximately a half mile from Manor Road (Route 82). (N.T., 6/22/11, at 32.) Officer Jason had just entered his residence with his daughter when he heard emergency vehicle and police car sirens resounding in the area. (N.T., 6/22/11, at 33.) Alerted by the many sirens, Officer Jason surmised that an accident had most likely occurred close by. Officer Jason stepped out of his house to confirm his suspicions and observed numerous police cars driving by his house. (N.T., 6/22/11, at 33.) Judging by the high volume of police activity and from his own experience as an officer, Officer Jason concluded that there was likely a high priority emergency taking place. (N.T., 6/22/11, at 34.) Officer Jason proceeded to call a close friend, Arthur Brown, from the Chester County Sheriff's Department to inquire into the situation. (N.T., 6/22/11, at 33.) He was informed that a shooting had occurred on Route 82, fairly close to his own residence. (N.T., 6/22/11, at 33.)

Officer Jason exited his home again and while standing outside, suddenly saw a man running through his yard. (N.T., 6/22/11, at 35.) Officer Jason called out to the man to ask him what he was doing on his property. (N.T., 6/22/11, at 37.) The man, later identified as Defendant, pointed to his shirt and stated that he was "just training, training for Golden Gloves." (N.T., 6/22/11, at 37; N.T., 6/23/11, at 80.) Suspicious, Officer Jason re-entered his home and contacted the Chester County Radio room to inquire as to whether they were looking for a subject involved in a shooting and to alert them of the suspicious man. (N.T., 6/22/11, at 38-39.) Shortly thereafter, police units began to arrive near Officer Jason's residence. (N.T., 6/22/11, at 39.) A search of the surrounding area ensued and Defendant was eventually found hiding in an abandoned barn. (N.T., 6/22/11, at 40.) Defendant was apprehended and transported to the West Brandywine Police Department, where upon being properly *Mirandized*, the Defendant admitted to shooting the victim, but claimed that he did so in self-defense. (Id. at 74, 171-172; N.T., 6/23/11, at 69.)

## DISCUSSION

In his Amended PCRA Petition, Defendant presents one (1) claim for our review. The sole claim in Defendant's own words is as follows:

    A. Petitioner is entitled to post-conviction relief in the form of a new trial or an evidentiary hearing as a result of the ineffective assistance of trial counsel for failing to impeach the complainant with the testimony he gave at the preliminary hearing which directly

5

> contradicted his trial testimony concerning the composition of the
> table in Petitioner's residence.

See Def.'s Am. PCRA Pet., 6/29/17, at 4.

We must first address the timeliness of Defendant's PCRA petition. The PCRA provides that any petition, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment becomes final at the conclusion of direct review or at the expiration of time for seeking the review. Id. at § 9545(b)(3); Commonwealth v. Breakiron, 781 A.2d 94, 97( Pa. 2001). If a defendant files a Petition for Allowance of Appeal and it is denied by the Supreme Court or if the defendant's judgment of sentence is affirmed by the Supreme Court, and the defendant does not file a Petition for a Writ of Certiorari with the United States Supreme Court, the judgment of sentence becomes final when the period for seeking such review expires, ninety (90) days after the entry of the Supreme Court's denying review or affirming the judgment of sentence. Commonwealth v. Lark, 746 A.2d 585, 587 (Pa. 2000).

Here, the Supreme Court denied the Defendant's Petition for Allowance of Appeal on September 5, 2013. Therefore, the judgment of sentence became final on December 4, 2013; ninety (90) days after the Supreme Court denied review. Defendant had until December 4, 2014, to file a timely PCRA petition. Consequently, the PCRA petition, filed on March 26, 2014, is timely.

To be eligible for relief under the PCRA, a petitioner must also establish that his allegations have not been previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). An issue is considered finally litigated for purposes of the PCRA if the "highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S.A. § 9544(a)(2). If the allegations of error have not been previously litigated, a petitioner must also demonstrate that those allegations have not been waived. An allegation is deemed waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, [or] on appeal...." 42 Pa.C.S.A. § 9544(b); Commonwealth v. Peterkin, 649 A.2d 121 (Pa. 1994). However, claims of ineffective assistance of counsel are distinct from previously litigated issues and may be brought in post-conviction proceedings. Commonwealth v. Collins, 888 A.2d 564 (Pa. 2005); see also Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), clarified on denial of reargument, 821 A.2d 1246 (Pa. 2003), holding modified by Commonealth v. Bethea, 828 A.2d 1066 (Pa. 2003) (holding that as a general rule, a defendant should wait to raise claims of ineffective assistance of trial counsel until collateral review). Here, the issue raised has not been previously litigated or decided in a proceeding collaterally attacking the judgment of sentence. Further, because Defendant's sole claims challenges the stewardship of trial counsel, it is cognizable under the PCRA.

We now turn our attention to the substantive merits of the sole claim raised in the Amended PCRA Petition. After independently reviewing the instant Petition, we agree with the Commonwealth and find Defendant's attempt at post-conviction relief to be without merit. Although Defendant requests an evidentiary hearing in this matter, it is well-settled that a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence. Commonwealth v. Hart, 911 A.2d 939 (Pa. Super. 2006); Commonwealth v. Bryant, 855 A.2d 726 (Pa. 2004). Accordingly, we find that Defendant's petition and amendment is to be dismissed without an evidentiary hearing.

It is well-settled that the test for counsel ineffectiveness is the same under both the Pennsylvania and Federal Constitutions. The proper analysis is the performance and prejudice test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Commonwealth v. Ali, 10 A.3d 282, 291 (Pa. 2010). To prevail on a claim of ineffectiveness of counsel, a defendant must demonstrate: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for her action or inaction; and

(3) that but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. Commonwealth v. Rollins, 738 A.2d 435, 441 (Pa. 1999). Respecting prejudice, "[a] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." Commonwealth v. Collins, 957 A.2d 237, 244 (Pa. 2008) (citing Strickland, 466 U.S. at 694).

The failure to satisfy any prong of this test will cause the entire claim to fail. Counsel is presumed to be effective and the Petitioner has the burden to prove otherwise. Commonwealth v. Hull, 982 A.2d 1020, 1023 (Pa. Super. 2009); see also Commonwealth v. Albrecht 720 A.2d 693, 701 (Pa.1998) (reasoning if it is clear that a defendant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met). Counsel will not be deemed ineffective for failing to raise a meritless claim. Commonwealth v. Giknis, 420 A.2d 419 (Pa. 1980). While the appointment of counsel in PCRA proceedings has been made mandatory by the rules of criminal procedure, appointed counsel possesses the prerogative of declining to litigate a meritless petition. See Pa. R. Crim. P. 1503-04; Commonwealth v. Turner, 544 A.2d 927 (Pa.1988); Commonwealth v. Tilley, 780 A.2d 649 (Pa. 2001). If it is clear that a PCRA allegation lacks arguable merit; an objectively reasonable basis designed to effectuate the defendant's interests existed for counsel's actions or inactions; or defendant was not prejudiced by the alleged error by counsel; then an evidentiary hearing is unnecessary. Commonwealth v. Trimble, 615 A.2d 48, 51 (Pa. Super. 1992).

**Trial counsel was not ineffective for failing to impeach the victim with his preliminary hearing testimony.**

With the aforementioned precepts in mind, we now only review the claim raised by counsel in the Amended PCRA Petition. During trial, the Commonwealth introduced Commonwealth Exhibit 20 depicting a table made out of wood, not glass, and also elicited testimony from East Fallowfield Township Police Officer Stacy Harper that the table was very small and white in color. (N.T., 6/21/11, at 155-156). Trial counsel did not attempt to impeach Mr. Idrovo with his preliminary hearing transcript, Officer Harper's testimony or with Commonwealth Exhibit 20.

Defendant first submits that he is entitled to post-conviction relief as a result of the ineffective assistance of trial counsel for failing to impeach the victim, Mr. Idrovo, with the testimony he gave at the preliminary hearing, which directly contradicted his trial testimony concerning the composition of the table in Defendant's residence. During the preliminary hearing, Mr. Idrovo testified that Defendant asked him into his apartment and had him sit down at a table situated therein. Mr. Idrovo testified that when he did so, Defendant drew a gun from his waistband and pointed it at him. N.T., 5/7/10, at 6-7. On cross-examination, Mr. Idrovo testified as follows:

> Q:    I'm sorry, I can't see. So you're saying he pulled it out of his waist band?
> A:    He had it in his waist, under his trousers.
> Q:    So he pulled it of his waistband?
> A:    Yes.
> Q:    And you were able to see that, even though he was sitting across the table from you?
> A:    It was a glass table.

(N.T., Preliminary Hearing, 5/7/10, at 19) (Emphasis added).

Initially, we note that an evidentiary hearing is not necessary because Defendant's claim fails to satisfy the Strickland test. After a conscientious examination of the record, the Court is unable to

7

conclude that the victim testified inconsistently at trial, and even if trial counsel was able to impeach the victim with a minor discrepancy concerning the physical composition of the table, this would not have changed the outcome of the trial given the overwhelming evidence of Defendant's guilt. Therefore, any actual prejudice resulting from trial counsel's failure to impeach Mr. Idrovo is clearly de minimis.

Here, much of Defendant's trial testimony corroborated Mr. Idrovo's version of the events and the Commonwealth's theory of the case. Specifically, Defendant admitted to shooting Mr. Idrovo and did not dispute the fact that Mr. Idrovo sat at his table while he held him at gun point. No factual dispute exists as to whether Defendant was armed with the gun when he invited Mr. Idrovo into his residence. Defendant's merely disputed that he was the aggressor by claiming he shot Mr. Idrovo in self-defense. N.T., 6/23/11, at 69-78, 102. Therefore, the composition of the table had no bearing on the ultimate issue in the case. Although Defendant argues that trial counsel could have used the alleged minor discrepancy concerning the composition of the table to discredit Mr. Idrovo's testimony, this would not have changed the outcome of the trial. Having presided over the three day trial and reviewed the record multiple times, the Court finds it highly unlikely that the jury would have accepted Defendant's self-defense argument even if the victim was impeached regarding the composition of the top of the table.

Impeachment of witnesses with a prior inconsistent statement is governed by Pa.R.E. 613. This Rule states in relevant part:

> A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. The statement need not be shown or its contents disclosed to the witness at that time, but on request, the statement or contents must be shown or disclosed to an adverse party's attorney.

Pa.R.E. 613(a). See also, Commonwealth v. Lively, 610 A.2d 7, 10 (Pa. 1992) (Holding that a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements.). "It is well settled that an omission is not the same as an inconsistency." Commonwealth v. McEachin, 537 A.2d 883, 891 (Pa. Super. 1988), citing Commonwealth v. Hammond, 454 A.2d 60, 64 (Pa. Super.1982). "[M]ere dissimilarities or omissions in prior statements ... do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness's testimony to be admissible as prior inconsistent statements. Commonwealth v. Bailey, 469 A.2d 604, 611 (Pa. Super. 1983) (holding that a witness cannot be impeached with his or her prior statements unless such statements are truly inconsistent).

In the present case, there was nothing in Mr. Idrovo's preliminary hearing testimony that was so inconsistent with his trial testimony, as to compel a conclusion that Defendant was denied the use of vital impeachment evidence at trial. The record is unclear whether the victim testified at trial differently than at the preliminary hearing. At the preliminary hearing the victim testified concerning the composition of the "dining room" table, (see N.T., 5/7/10, at 17-19), but at trial he never testified concerning the composition of the table. Along similar lines, Mr. Idrovo was questioned specifically about the "dining room" table at the preliminary hearing, but at trial, the table was described as a "kitchen" table. Therefore, the record is unclear as to whether there was more than one table in the residence.

Mr. Idrovo did not contradict his preliminary hearing testimony at trial, thereby warranting impeachment. In fact, he testified consistently at both proceedings by stating that Defendant pulled the gun from his waistband. Consequently, trial counsel was not ineffective for failing to impeach the victim at trial with his preliminary hearing testimony with respect to the physical composition of the table, when the testimony from the two proceedings was not inconsistent.

8

**Trial counsel was not ineffective for failing to impeach the victim with Officer Harper's testimony concerning her description of a table located in the kitchen.**

Defendant next contends that that trial counsel was ineffective for failing to impeach Mr. Idrovo with Officer Harper's trial testimony concerning the composition of the kitchen table.   At trial, Officer Stacy Harper of the East Fallowfield Police Department testified on direct as follows:

> Q:     Can you describe what it looks like when you first walk in the door?
> A:      It's a small kitchen.  I believe it has a counter on the left hand side as you walk in, the refrigerator was in front of you and there was a small table, **I believe it was white**, on the right hand side.  Then there was — the hallway was off to your right, back toward the bedroom.

(N.T., 6/21/11, at 155-156) (Emphasis added).

Officer Harper's testimony was not inconsistent with the victim's testimony.  However, even if it was, counsel is prohibited from impeaching a witness through the use of another witness's inconsistent statement.  Specifically, Pennsylvania Rule of Evidence prohibited trial counsel from impeaching Mr. Idrovo with Officer Harper's testimony.

Rule 613 states in relevant part:

Witness's Prior Inconsistent Statement to Impeach; Witness's Prior Consistent Statement to Rehabilitate

a.  Witness's Prior Inconsistent Statement to Impeach.  A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility.  The statement need not be shown or its contents disclosed to the witness at that time, but on request the statement or contents must be shown or disclosed to an adverse party's attorney.

b.  Extrinsic Evidence of a Witness's Prior Inconsistent Statement. Unless the interests of justice otherwise require, extrinsic evidence of a witness's prior inconsistent statement is admissible only if, during the examination of the witness,

(1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness; (2) the witness is given an opportunity to explain or deny the making of the statement; and; (3) an adverse party is given an opportunity to question the witness.

Pa.R.E. No. 613(a), (b) (Emphasis added).

"A party may impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with his trial testimony." McManamon v. Washko, 906 A.2d 1259, 1268 (Pa. Super. 2006) (citation omitted). However, it must be established "that when attempting to discredit a witness'[s] testimony by means of a prior inconsistent statement, the statement must have been made or adopted by the witness whose credibility is being impeached." Commonwealth v. Simmons, 662 A.2d 621, 638 (Pa. 1995) (citation omitted).  Moreover, an

9

attorney may not impeach a witness on the basis of another witness' prior inconsistent statement. <u>Wallis v. Se. Pennsylvania Transp. Auth.</u>, 723 A.2d 267 (Pa. Commw. Ct. 1999).

Having already explained why the record fails to establish that Mr. Idrovo testified at trial in a manner contrary to his preliminary hearing testimony, we also conclude that the record does not evidence that Mr. Idrovo adopted Officer Harper's trial testimony in any way. Officer Harper's testimony established at a minimum that there was a "counter" and a "small table" in the dining room/kitchen area. However, the record is unclear as to the total number of tables in that area. It is plausible that there were additional tables in that area of the residence. Furthermore, Officer Harper did not identify the composition of either the "counter" or "small table." Officer Harper's belief that the "small table" was "white, on the right hand side does not mean that it could not have also had a glass top. Similarly, the officer's testimony does not dispositively establish that the top of the table was made of wood or other solid material. It is reasonable to conclude that the "small table" could have been white on the sides, with a glass top. Because Officer Harper did not testify about the composition of the top of the table, trial counsel was not ineffective for failing to impeach Mr. Idrovo with Officer Harper's trial testimony.

We acknowledge that trial counsel could have attempted to discredit the testimony through cross-examination at trial. Trial counsel could have questioned Mr. Idrovo about Officer Harper's belief that the table was white. However, this omission would not have changed the outcome of the trial. We reiterate that too prevail on a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in <u>Pierce</u>, 527 A.2d at 975-976: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. To establish the third, prejudice prong, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness. <u>Strickland v. Washington</u>, 466 U.S. 1059 (1987).

Here, given the overwhelming evidence of Defendant's guilt in this case, including his statements to police and flight to avoid apprehension, we do not find that trial counsel's failure to question the victim regarding Officer Harper's testimony satisfies the prejudice prong of the <u>Pierce</u> test. As we have already explained, common sense dictates that Officer Harper's testimony is not irreconcilable with the victim's statement that the table was glass. Officer Harper did not testify that the entire table was white or made of a non-transparent material, i.e., wood. Based on the testimony of the victim and Officer Harper, it would be reasonable for a jury to conclude that the table was made of glass but also had a white trim or base. In more general terms, the fact-finder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the fact-finder. <u>Commonwealth v. Treiber</u>, 874 A.2d 26, 30 (Pa. 2005); <u>Commonwealth v. Williams</u>, 854 A.2d 440, 445 (Pa. 2004). It follows directly from the above principles that a jury is not obliged to believe testimony, including a self-defense argument, offered by a defendant. Accordingly, Defendant's claim does not entitle him to relief under the PCRA.

<u>Trial counsel was not ineffective for failing to impeach the victim with Commonwealth Exhibit 20.</u>

In his final argument, Defendant contends that trial counsel was ineffective for failing to impeach the victim with Commonwealth Exhibit 20. We disagree. A review of the record concerning Commonwealth Exhibit 20 reveals that Officer Moore and Officer Harper both testified at trial about the exhibit. Officer Moore described Commonwealth Exhibit 20 as a photograph depicting a gun case on a solid "kitchen" table. (N.T., 6/22/11, at 23-24). Officer Harper also testified as follows:

Q: So what did you do in response to talking to her about she had a gun?

10

A: We followed her into the residence. She allowed us to come in. My progress into the residence was only into the kitchen, which was right inside the door. I stood right inside the kitchen. At that time she went and I believe showed Officer Moore where the gun case was and the gun case was empty.

...

Q: So then was the casing - - did you - - I'm sorry. Officer Moore, you said located a gun case?

A: That is correct.

Q: Did you eventually see that?

A: Yes, I did.

Q: How did he bring it out?

A: It was brought out, Officer Moore came out, he was wearing gloves, and the case was in his hand. It was a black plastic case that has foam on the inside, when you purchase a handgun comes inside one of these cases, so that you can keep it locked and secure.

Q: I'm going to show you what's been marked as Commonwealth Exhibit-20, do you recognize that?

A: Yes, I do. That's the case that they brought out.

(N.T., 6/21/11, at 156).

Officer Moore testified as follows:

Q: Can you please describe when you go in the door what it is you see there?

A: As you go in a main door there is a kitchen area. From the kitchen area is a living room as well as a small hall which goes to the bedrooms.

Q: Is there a kitchen table there?

A: Yes, there is, right to the right.

Q: What did you do when you went inside?

A: After I read her the consent, we searched the house. In her bedroom we'd found on her clothes bureau was an open gun case.

Q: Can you describe the gun case?

A: It was a dark blue or black gun case for a .9mm handgun.

...

11

Q: I'm going to show you what's been marked as Commonwealth Exhibit-20. I'm going to ask you if you recognize that.

A: Yes, I do. This is the gun case I found.

Q: And does that look to be in the location where you found it?

A: No, actually this is on the kitchen table.

Q: Okay, so you do remember it. Did somebody move it to the kitchen table?

A: I moved it to the kitchen table.

(N.T., 6/22/11, at 23-24) (Emphasis added).

Defendant's argument is predicated upon the faulty assumption that Commonwealth Exhibit 20 depicts the same table that Officer Harper referred to as the "kitchen table" at trial. Defendant further presumes that the exhibit depicts the same table that Mr. Idrovo described as having a glass top at the preliminary hearing. Trial counsel cannot be ineffective for failing to impeach on a speculative claim. It is clear from the record that Commonwealth Exhibit 20 was never identified as the same table that Mr. Idrovo testified about at the preliminary hearing. It is also equally plausible that Commonwealth Exhibit 20 depicts the "counter "and not the table referenced by Mr. Idrovo at the preliminary hearing. Mr. Idrovo never testified about the composition of the "counter." Therefore, it is unclear whether the "kitchen table" identified by Officer Moore is the same table that Mr. Idrovo sat at when he entered Defendant's residence. Because Defendant is unable to prove that Commonwealth Exhibit 20 depicts the same table that Mr. Idrovo sat at inside Defendant's residence and testified about at the preliminary hearing, we write no further on this issue.

Having determined that the sole claim raised in the counseled Amended PCRA Petition lacks arguable merit, we find that Defendant is not entitled post-conviction relief. Accordingly, Defendant's *pro se* PCRA petition and amendment are to be dismissed.

12