IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hanan Hasan, : 
             Appellant : 
              : 
       v. : 
              : 
Vincent Figaro and Southeastern :   No. 392 C.D. 2019
Pennsylvania Transportation Authority :   Argued: November 12, 2019

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: December 17, 2019

       Hanan Hasan (Appellant) appeals from the December 28, 2018 judgment entered in the Court of Common Pleas of Philadelphia County (trial court) following a jury trial. Upon review, we affirm.

       On March 15, 2017, Appellant filed a claim seeking damages allegedly resulting from a March 23, 2015 automobile accident during which a Southeastern Pennsylvania Transportation Authority (SEPTA) bus driven by Vincent Figaro (Figaro) (collectively, Appellees) rear-ended Appellant's car at an intersection in Philadelphia. *See* Trial Court Opinion dated February 28, 2019 (Trial Court Opinion) at 1.

       The trial court conducted a jury trial on this matter in June 2018. On June 12, 2018, the jury returned a verdict finding both Appellant and Appellees 50%

negligent for Appellant's injuries and awarding $6,608.00 in damages. Appellant filed a timely Motion for Post-Trial Relief seeking a new trial, and SEPTA filed a contingent cross-motion for post-trial relief. *See* Brief In Support of Plaintiff's Motion for Post-Trial Relief In Accord With Pa.R.C.P. No. 227.1; Supplemental Reproduced Record (S.R.R.) at 1.b-5.b. The trial court denied Appellant's post-trial motion on October 17, 2018, and further denied SEPTA's contingent cross-motion for post-trial relief as moot on October 29, 2018. On December 28, 2018, the trial court entered judgment on the verdict, and Appellant timely appealed to this Court.

Appellant raises three claims on appeal. First, Appellant claims the trial court abused its discretion in failing to grant a mistrial and then a new trial based on the performance of the court-appointed interpreter. *See* Appellant's Brief at 5 & 18-25. Next, Appellant claims the trial court abused its discretion in failing to grant a mistrial and then a new trial after defense counsel questioned Appellant about her insurance, specifically whether she carried limited tort insurance. *See id.* at 5 & 26-30. Lastly, Appellant claims the trial court abused its discretion by instructing the jury that Appellant could only recover non-economic loss damages if she suffered serious impairment of a body function. *See id.* at 6 & 31-37.

### *Motions for a New Trial*

Initially, we will discuss our review of the trial court's denial of Appellant's request for a new trial. As our Supreme Court has explained, "[t]rial courts have broad discretion to grant or deny a new trial." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1121 (Pa. 2000). "[W]hen analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion." *Id.* at 1122.

2

The Supreme Court has explained:

> Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

*Harman*, 756 A.2d at 1122 (internal citations omitted). Further,

> [t]o review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court [to determine whether] a mistake occurred.
>
> . . . .
>
> If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error.

3

*Harman*, 756 A.2d at 1122–23 (internal citations, quotation marks, and brackets omitted).

### Interpreter Issue

Appellant first claims that the trial court should have granted a mistrial based on the court-appointed interpreter's performance at trial. *See* Appellant's Brief at 18-25. Specifically, Appellant claims that she was prejudiced by the interpreter's deficient translation. *Id.* Further, Appellant claims the trial court erred by not permitting Appellant's Arabic-speaking daughter to testify as to the interpreter's improper translations of questions. *Id.* We disagree.

"The decision to use an interpreter rests in the sound discretion of the trial judge." *Commonwealth v. Pana*, 364 A.2d 895, 898 (Pa. 1976). Trial courts are "necessarily accorded a wide discretion in determining the fitness of the person called [as an interpreter], and the exercise of that discretion will not be disturbed on review in the absence of some evidence from which prejudice can be inferred." *Commonwealth v. Riley*, 512 A.2d 22, 23–24 (Pa. Super. 1986).

Where a presiding judge determines that a principal party in interest or a witness has a limited ability to speak or understand English, the judge may appoint a certified interpreter to aid in the proceedings. *See* 42 Pa.C.S. § 4412(a). Where a certified interpreter is not reasonably available after a good faith effort has been made to locate one, the presiding judge may appoint an otherwise qualified interpreter who is readily able to interpret and has read, understands, and agrees to abide by the code of professional conduct for court interpreters. *See* 42 Pa.C.S. § 4412(b). A presiding judge may appoint an immediate family member as an otherwise qualified interpreter, if necessary. *See* 42 Pa.C.S. § 4412(d). Further, where the interpreter proves "unable to effectively communicate with the presiding

4

judicial officer or the person with limited English proficiency, including where the interpreter self-reports such inability[,]" a presiding judge must dismiss an interpreter and obtain the services of another interpreter.  42 Pa.C.S. § 4413.

In the instant matter, Appellant, an Arabic speaker, testified with the aid of a court-appointed English/Arabic interpreter.  *See* Notes of Testimony (N.T.), June 8, 2018 at 4 & 30; Reproduced Record (R.R.) at 61a & 68a.  During Appellant's direct examination, the interpreter interrupted the questioning multiple times with questions or for clarification.[1]  *See* N.T. 6/8/2018 at 5-26; R.R. at 62a-67a.  Neither party nor the trial court raised any objection regarding the interpreter's translations during Appellant's direct examination.  *Id.*

Shortly into defense counsel's cross-examination of Appellant, however, the following exchange occurred:

> THE COURT:  I don't know if she answered your question.
> Ma'am, do you recall being questioned at a deposition on October 31st with regard to this case?
> Interpreter, you have to say what I just said.
>
> COURT INTERPRETER:  I need an explanation.
>
> THE COURT:  The explanation is that you repeat what I just said to [Appellant].
>
> COURT INTERPRETER:  Can I say something as an interpreter?

---

[1] The interpreter interjected a total of six times during Appellant's direct examination: once to clarify procedure (N.T. 6/8/2018 at 5; R.R. at 62a); twice to have a question repeated (N.T. 6/8/2018 at 9 & 11; R.R. at 63a); once to have a question clarified by counsel (N.T. 6/8/2018 at 12; R.R. at 63a); once to repeat the question because the interpreter was confused (N.T. 6/8/2018 at 19; R.R. at 65a); and once because the interpreter was unsure about how to translate the name of a medicine (N.T. 6/8/2018 at 21; R.R. at 66a).

THE COURT: Say something.

COURT INTERPRETER: English is my fifth language. It's hard for me. The language the other sir was speaking was very clear. I am not legal interpreter.

THE COURT: The reason we have you is because of the legal issues. "In a deposition" is the only word I can say because that's the only word that there is.

I will try to say it differently, but I want to make sure she understands we are talking about a previous legal proceeding in this case.

[Appellant], do you recall testifying at a prior proceeding regarding this case on October 31st, 2017?

COURT INTERPRETER: Interpreter not understand.

THE COURT: We'll take a brief recess until the call of the crier.

***

(Whereupon the jury panel, having been excused from the jury box)

***

THE COURT: Interpreter, what do you not understand; the English language that I'm speaking?

***

(Whereupon there was no response)

***

THE COURT: Interpreter, what is it that you do not understand; the meaning of the language of what I am saying or the procedure that it is? I'm speaking to you, the interpreter. You need to answer me.

COURT INTERPRETER: She is - -

THE COURT: Worry about me. I'm the judge.

COURT INTERPRETER: I'm not legal interpreter. The terminology, ma'am - -

6

THE COURT: You mean there is no word for it?

COURT INTERPRETER: I don't understand it. I'm not legal interpreter.

N.T. 6/8/2018 at 28-30; R.R. at 67a-68a. Counsel for Appellant moved for a mistrial based on the fact that the court-appointed interpreter was not a legal interpreter, a fact counsel did not discover until the direct examination of Appellant had concluded. *See* N.T. 6/8/2018 at 30-31; R.R. at 68a. The trial court denied the motion for a mistrial explaining that the interpreter said she understood counsel's formal questioning and what Appellant communicated in response. N.T. 6/8/2018 at 31; R.R. at 68a. Thereafter, the trial court dismissed the interpreter and ordered a new interpreter. *See* N.T. 6/8/2018 at 31-32; R.R. at 68a.

The trial court explained its denial of Appellant's motion for a mistrial and a new trial based on the interpreter's performance as follows:

> Following proper procedure, this court appointed a certified interpreter to assist [Appellant] during her testimony. Appellant's contention that the interpreter struggled with her duties to such an extent that her interpretations cannot be deemed accurate due to improperly translated questions and answers on several vital questions is not supported by the record. In fact, the record suggests the exact opposite. During direct examination, there was no indication that the interpreter was unable to translate Appellant counsel's questioning. On the contrary, the translated responses to Appellant counsel's questions were appropriately responsive to the questions being asked. The interpreter was vocal when she needed a question repeated or needed clarification but she did not indicate at any point during Appellant counsel's direct examination that she did not understand the meaning of a word that needed to be translated.

7

Furthermore, [Appellant], who speaks some English, gave no indication during questioning that anything was being mistranslated.

It was only at the beginning of Appellees['] counsel's cross[-]examination that the interpreter indicated that she did not understand the terminology being used, specifically the term "deposition". As stated above, the interpreter was vocal when she needed a question repeated or clarified but this was the first time she indicated that she did not understand the meaning of the word being said. This court questioned the interpreter and she was very forthcoming about what she did and did not understand. She stated that "the other sir was speaking very clear", indicating that she understood all the questions being asked by Appellant counsel. It was only when Appellees['] counsel used specific legal terminology that the interpreter was unable to translate what was said and was thus[] unable to perform her duties. The interpreter properly informed the court and this court promptly removed her.

Trial Court Opinion at 6-7 (internal record citations omitted).

We find no abuse of discretion in the trial court's actions regarding the first court interpreter in this matter. The interpreter was court-appointed after a request by Appellant's counsel. *See* N.T. 6/8/2018 at 30; R.R. 68a. She indicated no issues understanding and/or translating during direct examination of Appellant. *See* N.T. 6/8/2018 at 5-26; R.R. at 62a-67a. Neither the parties, the trial court, nor the witness objected to the interpreter's translation during the direct examination. *Id.* Upon discovery of the interpreter's issues with certain legal jargon, the trial court immediately dismissed the interpreter from service, ordered a new interpreter, and delayed the trial until the new interpreter arrived. The trial court acted promptly and

properly in response to discovering the interpreter's deficiencies and did not abuse its discretion in so doing.

To the extent Appellant argues that the trial court erred by not allowing Appellant's daughter to testify regarding the translations of the first interpreter, we do not agree.

Of course, "questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent a finding of abuse of discretion." *Carpenter v. Pleasant*, 759 A.2d 411, 414 (Pa. Cmwlth. 2000). A trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

The trial court explained its denial of Appellant's request to have her daughter testify regarding the interpreter's translations thusly:

> [T]here was no objective indication that the interpreter mistranslated any questions or answers during direct examination. Furthermore, [Appellant's] daughter is not a certified interpreter and has a close relationship to [Appellant]. Therefore, there is huge potential of bias in her interpretation of whether the translation of the testimony was accurate. It would have been highly prejudicial to Appellees to allow her to offer such testimony.

Trial Court Opinion at 7-8.

We agree that no objective indication existed that the interpreter mistranslated during Appellant's direct examination. Further, we agree that allowing Appellant's daughter, who was not a certified interpreter, presented a

9

possibility of bias that was within the discretion of the trial court to avoid. Therefore, we find no error or abuse of discretion in the trial court's refusal to allow Appellant's daughter to testify regarding the translations provided by the first court-appointed interpreter.

### *Limited Tort Insurance Question Issue*

Appellant next claims that the trial court erred by not granting a mistrial and/or a new trial based on a question posed by Appellees' counsel during cross-examination of Appellant pertaining to whether Appellant carried limited tort insurance. *See* Appellant's Brief at 26-30. We do not agree.

During cross-examination, Appellees' counsel asked Appellant about the "insurance papers" from her vehicle that Appellant had mentioned on direct examination. *See* N.T. 6/8/2018 at 46-47; R.R. at 72a. The following exchange occurred:

Q  Then you got back inside your car and you got some papers, correct?

A  Correct.

Q  You mentioned earlier today on direct examination that the papers you went to get were your insurance papers.

A  Yes, that's what I meant by saying "papers."  I meant the insurance papers.

Q  The insurance papers that you went to get indicated you had limited tort.

[Appellant's Counsel]:  Objection.

THE COURT:  Sustained and stricken.  Not to be considered by the jury.

*See* N.T. 6/8/2018 at 46-47; R.R. at 72a. Appellees' counsel then moved on and questioned Appellant about photographs taken of the car the following day. *See* N.T. 6/8/2018 at 47; R.R. at 72a. Appellant's counsel did not request further curative instructions or request a mistrial at that time. *See* N.T. 6/8/2018 at 47; R.R. at 72a.

As has been explained:

> The general rule in Pennsylvania is that evidence of insurance is irrelevant and prejudicial and justifies the grant of a mistrial. The reason is obvious: fact-finders should not be tempted to render decisions based upon the extraneous consideration that an insurance company will actually pay the bill. However, the mere mention of the word insurance by a witness does not necessitate a new trial; rather, there must be some indication the [movant] was prejudiced.

*Dolan v. Carrier Corp.*, 623 A.2d 850, 853 (Pa. Super. 1993) (internal citations omitted). Further, "the effect of striking out objectionable questions, answers, or other evidence is ordinarily to cure any harm done and to avoid any necessity of a continuance or new trial." *Commonwealth v. Gross*, 189 A. 726, 728 (Pa. Super. 1937). Additionally, "[i]t is well settled that juries are presumed to follow the instructions of a trial court to disregard inadmissible evidence." *Commonwealth v. Simpson*, 754 A.2d 1264, 1272 (Pa. 2000) (regarding curative instructions).

Here, the jury was exposed to a single reference to limited tort insurance in a question posed by Appellees' counsel. Appellant's counsel immediately objected, and before Appellant answered the question, the trial court sustained the objection. The trial court then immediately offered a curative instruction that instructed the jury not to consider the question. Appellant's counsel did not request further instruction or request a mistrial at that time. By sustaining Appellant's

11

counsel's objection and immediately cautioning the jury not to consider the limited tort question, which instruction the jury is presumed to have followed, the trial court cured any prejudice created by the single fleeting reference to limited tort insurance in this matter. *See Simpson*; *Gross*. We discern no error of law or abuse of discretion in the trial court's denial of a mistrial and/or new trial based on Appellees' counsel's single reference to limited tort insurance in a question that the trial court struck upon objection.

### *Serious Impairment Jury Instruction*

Lastly, Appellant claims that the trial court erred by charging the jury that Appellant could not recover non-economic damages unless she suffered "serious impairment of a body function." *See* Appellant's Brief at 31-37. Appellant claims the instruction was improper because no evidence was presented that Appellant carried limited tort automobile insurance.[2] *See id.* at 33. We disagree.

---

[2] As the Superior Court explained:

> Pennsylvania's Motor Vehicle Financial Responsibility Law[], 75 Pa.C.S.[] §§ 1701–1799.7, permits insureds to elect full tort or limited tort insurance coverage for private passenger motor vehicles. *See* 75 Pa.C.S.[] § 1705. With full tort coverage, the insured maintains "an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers." 75 Pa.C.S.[] § 1705(a)(1). An election of limited tort insurance coverage, on the other hand, means that "you and other household members ... may seek recovery for all medical and other out of pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of 'serious injury' as set forth in the policy or unless one of several other exceptions noted in the policy applies." *Id.* Persons who elect limited tort coverage pay lower premiums.

*Bennett v. Mucci*, 901 A.2d 1038, 1040–41 (Pa. Super. 2006).

12

The purpose of jury instructions is to clarify the legal principles at issue. *Chicchi v. Se. Pa. Transp. Auth.,* 727 A.2d 604, 609 (Pa. Cmwlth. 1999). "Instructions must be confined to the issues raised in the pleadings and facts developed by evidence in support of those issues." *Wallis v. Se. Pa. Transp. Auth.*, 723 A.2d 267, 269 (Pa. Cmwlth. 1999) (citing *Hronis v. Wissinger,* 194 A.2d 885 (Pa. 1963)); *see also Perigo v. Deegan*, 431 A.2d 303, 306 (Pa. Super. 1981) (trial court properly instructed jury on an issue that was properly raised in pleadings and the proofs adduced at trial, despite neither counsel arguing the issue). Where an insured carries limited tort automobile insurance, whether the insured's injuries rise to the threshold level of a serious impairment of a body function for recovery under a limited tort policy is for the jury to determine. *Washington v. Baxter*, 719 A.2d 733, 740 (Pa. 1998); *see also Robinson v. Upole*, 750 A.2d 339, 342 (Pa. Super. 2000).

Here, the trial court instructed the jury, in relevant part, as follows:

> Under Pennsylvania[] law the plaintiff may recover noneconomic loss damages in this case if the plaintiff can prove that, first, the defendant's negligence was a factual cause in bringing about injury to the plaintiff.
>
> Second, the plaintiff's injuries resulted in noneconomic damages.
>
> Third, the plaintiff suffered serious impairment of a body function.

N.T. 6/12/2018 at 58-59; R.R. at 124a.

The trial court explained the decision to include the serious impairment jury instruction as follows:

13

Although Appellant is correct that such evidence was not presented at trial, this court made it's [sic] determination to give the serious impairment instruction to the jury based on Appellant's failure to properly deny Appellees' allegation that Appellant was subject to limited tort in the pleadings.

Trial Court Opinion at 9. The trial court went on to discuss the pertinent Pennsylvania Rules of Civil Procedure concerning responsive pleadings in relation to the allegation in Appellees' new matter that Appellant was subject to the limited tort automobile insurance option, ultimately concluding as follows:

Appellees filed an answer with new matter stating that Appellant was subject to the limited tort option. Appellant responded to the new matter with a single paragraph stating that all allegations are "denied as conclusions of law to which no response is necessary under the Pennsylvania Rules of Civil Procedure. To the extent that a response may be necessary, the allegations are denied and strict proof is demanded at time of trial." This court deemed that Appellant's response was inadequate. Appellees made a factual assertion that Appellant was subject to the limited tort option. This was not merely a conclusion of law and this required a specific denial. Since such denial was not provided, Appellees' assertion that Appellant was subject to the limited tort option was deemed admitted. Therefore, the serious impairment instruction was appropriate and the court did not abuse its discretion in reading it to the jury.

Trial Court Opinion at 10-11 (internal citations omitted).

Our review of the record indicates that, contrary to the trial court's suggestion that no evidence of Appellant's limited tort insurance coverage was adduced at trial, Appellant conceded at her October 31, 2017 deposition that her automobile insurance was limited tort. *See* Appellant's October 31, 2017 Deposition

14

Transcript at 20; S.R.R. at 14.b. Prior to resting its case, Appellees moved the deposition transcript into evidence without objection or limitation upon the purpose of its admission. *See* N.T. 6/11/2018 at 56; R.R. at 106a. Thus, despite not doing so in live testimony presented on the witness stand at trial, Appellees did, in fact, present evidence that was available to the jury that Appellant carried limited tort automobile insurance. Having been raised by the evidence adduced at trial, the question of whether Appellant's injury reached the threshold level of serious impairment for recovery of non-economic damages under a limited tort automobile insurance policy was for the jury to decide. *See Washington*. Accordingly, we find no error in the trial court's inclusion of the serious impairment jury instruction, albeit on different grounds. *See Stalworth v. Workers' Comp. Appeal Bd. (Cty. of Del.)*, 815 A.2d 23, 30 (Pa. Cmwlth. 2002) (holding that this Court may affirm the result reached below if it "is correct without regard to the grounds relied upon by that court").

For the reasons above, we find no error of law or abuse of discretion in the trial court's denial of Appellant's post-trial motion seeking a new trial. Accordingly, we affirm the order of the trial court.

_____
CHRISTINE FIZZANO CANNON, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hanan Hasan,                                    :
                Appellant          :
                                :
          v.               :
                                :
Vincent Figaro and Southeastern    :    No. 392 C.D. 2019
Pennsylvania Transportation Authority :

**O R D E R**

AND NOW, this 17th day of December, 2019, the December 28, 2018 judgment entered in the Court of Common Pleas of Philadelphia County is AFFIRMED.

 

_____
CHRISTINE FIZZANO CANNON, Judge